IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>STATE OF WISCONSIN,<br><br>Plaintiffs,<br>v.<br><br>GEORGE REED and LOUANN REED,<br><br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:22-cv-01243 |

**DEFENDANTS GEORGE REED AND LOUANN REED'S JOINT**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COME NOW Defendants George Reed, LouAnn Reed, and the Maggie and Lucy Irrevocable Trust dated September 11, 2019 (the "Reed Defendants"), by and through undersigned counsel, and for their Motion to Dismiss Counts I, II, III, and IV, V, VI, and VII of Plaintiff's Complaint in this matter, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), state the following:

**I. Applicable Standard**

A complaint generally must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the [nonmoving party]" and must also draw all reasonable inferences in favor of the nonmoving party. *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008) (citation omitted). It is generally the case that, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

In reviewing the Complaint in response to a motion to dismiss for failure to state a claim, a court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir.2003). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*. 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, under Rule 9(b) of the Federal Rules of Civil Procedure, a heightened standard applies where fraud is alleged, and "'Rule 9(b)'s particularity requirements apply with equal force to state consumer fraud statutes as they do to common law fraud claims.'" *Lavender v. Wolpoff & Abramson, L.L.P.*, 2007 WL 2507752, at *2 (W.D.Mo. Aug.30, 2007) (quoting *Courchene v. Citibank N.A.*, 2006 WL 2192110, at *2 (W.D.Mo. Aug.1, 2006). *See also Johnson v. Gilead Scis., Inc.*, 563 F. Supp. 3d 981, 990 (E.D. Mo. 2021) ("The United States District Courts in Missouri have consistently held that Rule 9(b) applies to MMPA cases"), citing *Blake v. Career Educ. Corp.*, 4:08-cv-00821-ERW, 2009 WL 140742, at *2 (E.D. Mo. Jan. 20, 2009) (collecting cases). *See also Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010)

(applying Rule 9(b) to a Wisconsin DTPA claim); *Byrd v. Landowski*, 2010 WI App 120, ¶ 7, 329 Wis. 2d 271, 789 N.W.2d 755 (unpublished) (applying particularity standard of Wis. Stat. § 802.03(2) to claim under DTPA); *Miller v. Vonage Am., Inc.*, No. 14–CV–379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015) ("Because a claim under the DTPA sounds in fraud, it must be pleaded with particularity.")

The Eighth Circuit "has held that 'Rule 9(b)'s heightened pleading requirement applies to statutory fraud claims.'" *Moeller v. Samsung Elecs. Am., Inc.*, 322CV00013SHLHCA, 2022 WL 4182205, at *4 (S.D. Iowa Aug. 24, 2022), quoting *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). "When… a statute also provides redress for non-fraudulent conduct, the Court must analyze whether the specific claim is 'grounded in fraud such that Rule 9(b) applies.'" *Moeller*, 2022 WL 4182205, at *4 (holding that petition was "grounded in fraud because, inter alia, [plaintiff] alleges that Samsung "fraudulently and deceptively markets, sells, and distributes Home Appliances ... when it knows it has no intention of honoring the Warranty," which "is enough to trigger the heightened requirements of Fed. R. Civ. P. 9(b)"), quoting *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018). "A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." *Id. See also Olin*, 910 F.3d at 1075 (concluding that allegations about "misrepresentations" and "deception" sound in fraud); *FTC v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 853 (C.D. Cal. 2010) ("The gravamen of these allegations is that [defendants] engaged in a unified course of fraudulent conduct. The FTC's omission of the "magic word"—fraud—from its Complaint does not detract from the apparently fraudulent nature of the allegations.")

Rule 9(b) of the Federal Rules of Civil Procedure requires that a "party must state with particularity the circumstances constituting fraud or mistake." *Id*. Under the heightened pleading requirements of Rule 9(b), "the complaint must identify the 'who, what, where, when, and how' of the alleged fraud." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc*., 441 F.3d 552, 556 (8th Cir. 2006) (quoting *U.S. ex rel. Costner v. URS Consultants, Inc*., 317 F.3d 883, 888 (8th Cir. 2003)).

### II. All of Plaintiff's Claims Involving the Reed Defendants Must Fail Because the Complaint Fails to Allege Specific, Non-Conclusory Facts That Would Establish Personal Liability for any Reed Defendant as Individuals

Plaintiff has failed to allege specific, non-conclusory facts that, if true, would establish personal liability for the Reed Defendants pursuant to the FTC Act, the Wisconsin Direct Marketing Rule, or the Wisconsin Fraudulent Misrepresentation Law. 15 U.S.C. § 45(b) authorizes the FTC to pursue injunctive relief:

> Whenever the Commission shall have reason to believe that **any such person, partnership, or corporation has been or is using** any unfair method of competition or unfair or deceptive act or practice in or affecting commerce…

*Id*. (emphasis added). 15 U.S.C. § 45(m) provides, in relevant part:

> (1)(A) The Commission may commence a civil action to recover a civil penalty in a district court of the United States **against any person, partnership, or corporation which violates any rule** under this subchapter respecting unfair or deceptive acts or practices (other than an interpretive rule or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of subsection (a)(1)) with actual knowledge or knowledge fairly implied on the basis of objective circumstances that such act is unfair or deceptive and is prohibited by such rule.

*Id*. (emphasis added). 15 U.S.C.A. § 57b(a)(1) provides, in relevant part, that:

> If any person, partnership, or corporation violates any rule under this subchapter respecting unfair or deceptive acts or practices (other than an

> interpretive rule, or a rule violation of which the Commission has provided is not an unfair or deceptive act or practice in violation of section 45(a) of this title), then the Commission may commence a civil action against such person, partnership, or corporation for relief…

15 U.S.C. § 57b (West).

Liability of individual defendants under the FTC Act "for the corporate defendant's violations" can be found only if the FTC demonstrates that "(1) the corporate defendant violated the FTC Act; (2) the individual defendants participated directly in the wrongful acts or practices or the individual defendants had authority to control the corporate defendants; and (3) the individual defendants had some knowledge of the wrongful acts or practices." *F.T.C. v. PayDay Fin. LLC*, 989 F. Supp. 2d 799, 809–10 (D.S.D. 2013), quoting *F.T.C. v. Nat'l Urological Grp., Inc*., 645 F.Supp.2d 1167, 1207 (N.D.Ga.2008) (citation omitted). "To satisfy the knowledge requirement, the FTC must establish that the individual defendant either: (1) had actual knowledge of the wrongful acts or practices; (2) was recklessly indifferent to whether or not the corporate acts or practices were fraudulent; or (3) had an awareness of a high probability that the corporation was engaged in fraudulent practices along with an intentional avoidance of the truth." *PayDay Fin, LLC*, 989 F. Supp. 2d 810, quoting *F.T.C. v. J.K. Publ'ns, Inc*., 99 F.Supp.2d 1176, 1204 (C.D.Cal.2000).[1]

---

[1]Plaintiffs cannot hold the Reed Defendants liable for the actions of the company through a theory of vicarious liability. "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003). "A corporate employee typically acts on behalf of the corporation, not its owner or officer." *Id.*, at 286 (holding the Fair Housing Act, which creates a cause of action "against any person who directs or controls, or has the right to direct or control, the conduct of another person with respect to any aspect of the sale ... of dwellings," provides for traditional vicarious liability and does not allow corporate officers to be held personally liable).

A violation of Wisconsin's Deceptive Trade Practices Act (DTPA), Wisconsin Statutes section 100.18(1), and its associated remedies sought by the State of Wisconsin are predicated on personal liability. *See State v. Abbott Laboratories*, 2012 WI 62, ¶ 37, 341 Wis. 2d 510, 535, 816 N.W.2d 145, 158 (elements of a DTPA claim are: "1) that the defendant made a representation to the public with the intent to induce an obligation; 2) that the representation was untrue, deceptive or misleading; and 3) that the representation caused the plaintiff a pecuniary loss."); and Wis. Stat. 100.26(4) ("**Any person who violates** s. 100.18(1) to (8) or (10) or 100.182 is subject to a civil forfeiture of not less than $50 nor more than $200 for each violation) (emphasis added).[2]

Similarly, under Wis. Stat. 100.20, "a corporate employee may be personally liable for acts, he or she takes on behalf of the corporate entity that employs him or her, that violate the HIPA." *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶ 41, 308 Wis. 2d 103, 128, 746 N.W.2d 762, 774–75. However, "merely being an officer, agent, employee, representative, shareholder, or director will not be enough to impose individual liability on a person in such a class **in the absence of proof that he or she was personally responsible for prohibited, unfair dealings or practices**. *Id. at* ¶ 41, 308 Wis. 2d at 128–29, 746 N.W.2d at 774–75 (emphasis added).

In most of the paragraphs of its Complaint, Plaintiff makes no distinction between the other Defendants and the Reed Defendants specifically, and fails to allege specific facts which would demonstrate why any corporation's actions and any corresponding

---

[2] Wis. Stat. Ann. § 100.26 provides for a "civil forfeiture to the state of not less than $100 nor more than $10,000 for each violation of an injunction issued under s. 100.18, 100.182 or 100.20(6)." However, no existing injunction under any of those sections is pleaded in the Complaint.

liability could properly be attributed to Defendants George and LouAnn Reed, or the Maggie and Lucy Trust, personally. Plaintiff alleges, in relevant part:

> Defendant George Reed is or has been an owner, officer, director, member, and/or manager of Premier Reservations Group, Square One Development Group, Square One Group, LLC, and Resort Transfer Group, LLC. At all times material to this Complaint, acting alone or in concert with others, Defendant George Reed has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. He is a signatory on Corporate Defendants' bank accounts. At least up until the June 5, 2022 sale of Mainline, he was regularly present at Corporate Defendants' business premises, hires employees, and directed day-to-day business operations. Defendant George Reed resides in this District, and in connection with the matters alleged herein, transacts, or has transacted business in this state and throughout the United States.
>
> Defendant LouAnn Reed is or has been an owner, officer, director, member, and/or manager of Corporate Defendants. She is the wife of Defendant George Reed. At all times material to this Complaint, acting alone or in concert with others, Defendant LouAnn Reed has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. At least up until the June 5, 2022 sale of Mainline, LouAnn Reed maintained the title of President, Secretary, and Director of SODG and was a signatory on Corporate Defendants' bank accounts. LouAnn Reed resides in this District, and in connection with the matters alleged herein, transacts, or has transacted business in this District and throughout the United States.

*See* Complaint at ¶¶ 26-27. With respect to direct liability of the Maggie and Lucy Trust, the Complaint alleges:

> On information and belief, Defendant The Maggie and Lucy Irrevocable Trust dated September 11, 2019 (the "Reed Trust") was a family trust and a co-owner of Mainline, along with the Carroll Trust, at all relevant times up until June 5, 2022. The Trustee of the Reed Trust is Defendant LouAnn Reed.

*See* Complaint at ¶¶ 22.[3] The allegations directed to George and LouAnn Reed are substantially common to those directed to most of the individual defendants, contain only conclusory statements and no specific factual allegations that allege personal involvement in the alleged actions. Plaintiff has failed to make factual allegations regarding any specific individual acts the Reed Defendants took which could be considered unlawful practices under the relevant statutes, or any action they took of any kind that would implicate the application of Wisconsin consumer protection laws. Even if the Complaint could be read to allege that the Corporate Defendants, to whom the Reed Defendants are alleged to have had managerial and supervisory responsibilities, have engaged in unlawful acts pursuant to the FTC Act or the Wisconsin statutes, Plaintiff does not plead with sufficient factual detail that the Reeds, as individuals, directed, participated in, had knowledge of, or engaged in such actions or acted with any nexus to Wisconsin. For example, Plaintiff does not explain how having a corporate title or being a "signatory on Corporate Defendants' bank accounts" has any meaningful relationship to the requisite knowledge, participation, or control in the alleged practices at issue to establish the Reeds' personal direction, participation, or engagement in the company's alleged unfair practices. *See* Complaint at ¶¶ 26-27.

Plaintiff's use of the disjunctive "or" in paragraphs 26 and 27 means that all they have committed to alleging is that each Reed Defendant "had the authority to control... the acts and practices set forth in this Complaint," without alleging knowledge of the practices at issue. Even if these allegations were not fatally conclusory—and they are—

[3] The Complaint also attempts to level allegations of alter ego at the Maggie and Lucy Trust, which are addressed in the next section.

the little the Complaint alleges is insufficient to state a claim against the Reed Defendants under any standard, much less the heightened pleading standard required by Rule 9(b).

### III. Claims Against the Reed Defendants Predicated on Alter Ego Are Based on Conclusory Allegations and Must Fail

Under Missouri law, the elements of a veil piercing or alter ego claim consists of:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC*, 606 S.W.3d 193, 204 (Mo. App. 2020), quoting *Collet v. American Nat'l Stores, Inc.*, 708 S.W.3d 273, 284 (Mo. App. 1986). "Conclusory allegations of alter ego status will not survive a motion to dismiss." *Maganallez v. Hilltop Lending Corp.*, 505 F.Supp.2d 594, 607 (N.D.Cal.2007); *see also Med. Supply Chain, Inc. v. Gen. Elec. Co.*, 144 Fed.Appx. 708, 713 (10th Cir.2005) (affirming that complaint failed to adequately plead alter ego claim because it lacked any "factual allegations to support these conclusory statements."); *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir.1996) (affirming dismissal of alter ego claim because the pleadings were "devoid of *any* specific facts or circumstances supporting this assertion."); *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 789 (N.D. Tex. 2008) (dismissing alter ego claims for failure to state a claim where, "[a]side from allegations that Kajberouni participated in illegal conduct through Heros and Hye–Tech, the complaint is devoid of any factual assertions to support Rolls–Royce's alter ego

claim”). “If [the allegation that defendants helped each other commit illegal acts were a sufficient factual basis to support an alter ego claim, then plaintiffs would be able to state an actionable alter ego claim any time they could adequately allege participation by an owner of a company in the company's illegal conduct.” *Id*.

Here the Complaint makes entirely conclusory allegations of alter ego that:

> The Reed Trust constitutes an alter ego of Defendants George Reed, LouAnn Reed (together, “the Reeds”), Mainline, Farmington, and the Subsidiaries. The Reeds, the Reed Trust, Mainline, Farmington, and the Subsidiaries have a unity of interest and have disregarded any separate entity. On information and belief, up until June 5, 2022, Carroll, George Reed, and the Trusts together controlled Mainline, Farmington, and the Subsidiaries through Carroll’s and the Reeds’ leadership roles at these companies and through their control over these companies’ bank accounts.” Following the transfer of Mainline stock to the Reed Trust, Mainline, Farmington, and the Subsidiaries continued to have substantially identical management, agents, business, purpose, operation, customers, and supervision as before, up until the Reed Trust sold its stake in Mainline to the Carroll Trust on June 5, 2022 in another non-arms length transaction for less than fair market value.
>
> The Trusts used Mainline, Farmington, and the Subsidiary Defendants as their instrumentality or business conduit and controlled their assets for the benefit of the Trusts. If the Trusts were not found to be responsible as alter egos, it would promote injustice, inequity and fraud on consumers by Carroll and the Reeds.

Complaint at ¶¶ 23-24. These allegations are entirely conclusory and fail to allege in any respect the necessary elements of: 1) complete domination of finances, policy and business practice by the Reed Defendants in respect to the transaction attacked; 2) use of that control by the Reed Defendants “to commit fraud or wrong, to perpetrate the violation of statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights”; and 3) proximate causation of loss or injury arising from that control. The Complaint fails to state any claim against the Reed

Defendants based on a theory of alter ego, and Counts I, II, III, and IV, V, VI, and VII of Plaintiffs' Complaint should be dismissed.

## IV. The Wisconsin Claims Cannot Be Filed by the Wisconsin Department of Justice in a Federal District Court

The Wisconsin Fraudulent Representations statute that the Wisconsin Department of Justice relies upon in filing Count VII provides, in relevant part:

> (11)(d) The department or the department of justice, after consulting with the department, or any district attorney, upon informing the department, **may commence an action in circuit court** in the name of the state to restrain by temporary or permanent injunction any violation of this section. The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court.

Wis. Stat. § 100.18 (West) (emphasis added). Similarly, the methods of competition and trade practices statute that the State relies upon in filing Counts IV, V, and VI provides, in relevant part:

> (6) The department **may commence an action in circuit court** in the name of the state to restrain by temporary or permanent injunction the violation of s. 100.70 or any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department may use its authority in ss. 93.14 and 93.15 to investigate violations of s. 100.70 or any order issued under this section.

Wis. Stat. Ann. § 100.20 (West) (emphasis added). These statutes, by their own terms, authorize the Wisconsin Department of Justice to file an action in a Wisconsin Circuit Court, not for it to file a federal action in a U.S. District Court. *Cf. State v. Balistreri*, 87 Wis. 2d 1, 4–5, 274 N.W.2d 269, 270 (Ct. App. 1978) (holding that criminal action brought under sec. 100.26(3), unlike injunctive action under 100.20(6), which must be

brought in circuit court, could be brought in Wisconsin county court).[4] None of the other authority cited in the Complaint authorizes the Wisconsin Department of Justice to file suit in a federal district court based on violations of these state statutes.

### V. The Court Should Decline to Exercise Supplemental Jurisdiction over the Wisconsin State Law Claims

A federal court may exercise supplemental jurisdiction over a claim where it is "so related to the claims in the action with [the Court's] original jurisdiction that" it forms "part of the same case or controversy under Article III of the" Constitution. 28 U.S.C. § 1367(a). However, "district courts may decline to exercise supplemental jurisdiction over a claim ... if the claim raises a novel or complex issue of State law... or where the claim substantially predominates over the claim or claims over which the district court has original jurisdiction…." *Id.* § 1367(c)(1) and (2). "The Court's exercise of its power to decline supplemental jurisdiction is discretionary." *Free the Nipple-Springfield Residents Promoting Equal. v. City of Springfield*, 153 F. Supp. 3d 1037, 1043 (W.D. Mo. 2015) (declining to exercise supplemental jurisdiction where "evaluating the alleged conflict between [an ordinance and a state statute] requires a court to determine the meaning of words in both laws" and [t]here is no case law to guide the Court in this matter" and "requires a Court to provide a definitive interpretation of both the ordinance and the statute" that "would not bind the state courts"), c*iting, e.g.*, *Innovative Home Health*

4 Unlike the issue considered in *Wong v. Minnesota Dept. of Human Services*, 820 F.3d 922, 932 (8th Cir. 2016), this case does not involve an attempt to limit an existing basis for federal jurisdiction to review an administrative decision on constitutional grounds, but instead the question of where, and under what circumstances, the Wisconsin Department of Justice is authorized to exercise a limited grant of statutory authority. Other than as authorized in the relevant statutes, the Wisconsin Department of Justice is not authorized to seek the relief sought.

*Care, Inc. v. P.T.–O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287–88 (8th Cir.1998). Federal courts may exercise:

> the power to refrain from hearing cases that would interfere with a pending state criminal proceeding, or with certain types of state civil proceedings, cases in which the resolution of a federal constitutional question might be obviated if the state courts were given the opportunity to interpret ambiguous state law, cases raising issues "intimately involved with [the States'] sovereign prerogative," the proper adjudication of which might be impaired by unsettled questions of state law… and cases which are duplicative of a pending state proceeding.

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716–17 (1996), citing, *e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975); *Juidice v. Vail*, 430 U.S. 327 (1977); *see Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28 (1959), *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976); and *Pennsylvania v. Williams*, 294 U.S. 176 (1935).

Here, the issues raised by the Wisconsin counts of the Complaint (Counts IV, V, VI, and VII) raise novel and complex issues of state law, and the breadth and application of a number of Wisconsin regulatory statutes, regulations and remedies, that will substantially predominate over the FTC claims over which this Court has original jurisdiction.

**VI. Counts IV, V, VI and VII Fail to State a Claim**

The elements of a DTPA claim under Wis. Stat § 100.18 are: "1) that the defendant made a representation to the public with the intent to induce an obligation; 2) that the representation was untrue, deceptive or misleading; and 3) that the representation caused the plaintiff a pecuniary loss." Wis. Stat. Ann. § 100.20 provides that the department "may commence an action in circuit court in the name of the state to restrain

by temporary or permanent injunction the violation of s. 100.70 or any order issued under this section." *See also Kaskin v. John Lynch Chevrolet-Pontiac Sales, Inc.*, 2009 WI App 65, ¶9, 318 Wis. 2d 802, 767 N.W.2d 394 (explaining that the administrative regulations in ch. ATCP 132 are "orders" issued under § 100.20). The same section authorizes the recovery requested in the Complaint, for "any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. *Id*. The imposition of civil penalties, as requested in the Complaint, for violations of section 100.20 apply only to any person who "**intentionally refuses, neglects or fails to obey** any regulation or order made or issued under" section 100.20. Wis. Stat. Ann. § 100.26 (West) (emphasis added). With respect to section 100.20, Wis. Adm. Code § ATCP 127.78 provides that "No person may knowingly assist any seller to engage in any activity or practice in violation of this subchapter."

The Complaint fails to properly plead, in a nonconclusory manner with respect to the Reed Defendants, the elements of these claims, or to support assistance liability. The Complaint fails to allege the required elements of knowledge or intent for the Reed Defendants. Similarly, rather than plead specific facts to support the existence of a pecuniary loss, the Complaint offers only the threadbare, conclusory recital that "Consumers are suffering, have suffered, and will continue to suffer substantial injury as a result of Defendants' violations" of the cited laws and regulations. Complaint at p. 28. Rather than plead any facts to establish knowing assistance by the Reed Defendants to violations by other Defendants, the Complaint merely repeatedly alleges "the Defendants have violated Wis. Admin. Code §§ ATCP 127.50 and 127.78 by providing knowing assistance to the other Defendants' violations of" the regulations at issue. These

threadbare, conclusory recitals are insufficient to state a claim against the Reed Defendants under any standard, much less the heightened pleading standard required by Rule 9(b).

**VII. Conclusion**

For the foregoing reasons, Defendants George Reed, LouAnn Reed, and the Maggie and Lucy Irrevocable Trust dated September 11, 2019, respectfully move to dismiss Counts I, II, III, IV, V, VI, and VII of Plaintiff's Complaint for failure to state a claim and for lack of proper jurisdiction.

Dated: January 27, 2023

Respectfully submitted,

ROSENBLUM, SCHWARTZ & FRY, P.C.

By: *<u>/s/ N. Scott Rosenblum</u>*

N. SCOTT ROSENBLUM #33390
Attorney for Respondent
120 South Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile 862-8050
srosenblum@rsflawfirm.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 27th day of January, 2023, the foregoing was filed via the Missouri Courts' eFiling System and will be thereby served upon counsel of record for all parties in this matter.

*<u>/s/ N. Scott Rosenblum</u>*