UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA, *et al*.,

Plaintiffs,

v.

Case No. 4:22-cv-01243

CONSUMER LAW PROTECTION, LLC, a Missouri limited liability company, *et al*.,

Defendants.

**PLAINTIFFS' OPPOSITION TO THE MOTIONS TO DISMISS**

## TABLE OF CONTENTS


**INTRODUCTION** ........ 1

**STANDARD OF REVIEW** ........ 1

**BACKGROUND** ........ 2

**ARGUMENT** ........ 3

**I. Rule 9(b) Does Not Apply to FTC Act Violations.** ........ 3

**A. The Majority View is that FTC Act Violations Are Not Fraud.** ........ 3

**B. The Eighth Circuit Would Agree with the Majority View.** ........ 4

**C. Defendants' Arguments Do Not Dictate a Different Result.** ........ 6

**D. Rule 9(b) Does Not Apply to the Wisconsin State Law Violations.** ........ 7

**II. The Complaint Satisfies Rule 8(a).** ........ 9

**III. Alternatively, the Complaint Sufficiently Pleads Particularity under Rule 9(b).** ........ 10

**A. The Complaint Is Pled with Particularity.** ........ 11

**B. Defendants' "Group" Pleading Arguments Fail.** ........ 14

**C. The Complaint Adequately Pleads Individual Liability.** ........ 15

**1. The Complaint Pleads Individual Liability for FTC Act Violations.** ........ 16

**2. The Complaint Pleads Individual Liability for the Wisconsin State Allegations.** ........ 20

**D. The Complaint Sufficiently Pleads Particularity as to Time, and Defendants' Statute of Limitations Arguments Fail.** ........ 21

**E. The Complaint Adequately Pleads Liability for the Trusts.** ........ 21

**IV. The Wisconsin Allegations Are Properly Filed in Federal Court.** ........ 25

**V. The Court Should Exercise Supplemental Jurisdiction over the Wisconsin Claims.** ........ 28

**CONCLUSION** ........ 29

## TABLE OF AUTHORITIES

**Cases**


*Abels v. Farmers Commodities Corp*,
259 F.3d 910 (8th Cir. 2001)........................................................................................ 25

*ABF Freight Sys. Inc. v. Intern'l Bro. of Teamsters*,
645 F.3d 954 (8th Cir. 2011)........................................................................................ 28

*Am. Orthodontics Corp. v. Epicor Software Corp.*,
746 F. Supp. 2d 996 (E.D. Wis. 2010) ............................................................................ 9

*Arnold v. LME, Inc.*,
537 F. Supp. 3d 1050 (D. Minn. 2021) .......................................................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................. 1, 21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................ 1

*Byrd v. Landowski*,
2010 WI App 120, 329 Wis. 2d 271, 789 N.W.2d 755 ................................................... 8

*Dida v. Ascension Providence Hosp.*,
No. 4:22-CV-0508-AGF, 2022 WL 2438347 (E.D. Mo. July 5, 2022)......................... 21

*Drobnak v. Anderson Corp.*,
561 F.3d 778 (8th Cir. 2009)................................................................................... 24, 25

*Erickson v. Pardus*,
551 U.S. 89 (2007) ................................................................................................... 1, 10

*Flakall Corp. v. Krause*,
269 Wis. 310, 70 N.W.2d 8 (1955) ................................................................................ 20

*Frick's Meat Products., Inc. v. Bond Equip. Corp.*,
No. 4:05CV1409RWS, 2006 WL 286976 (E.D. Mo. Feb. 6, 2006)............................... 12

*FTC v. AFD Advisors, LLC*,
No. 13 CV 6420, 2014 WL 274097 (N.D. Ill. Jan. 24, 2014)..................................... 3, 10

*FTC v. Am. Fin. Benefits Ctr.*,
324 F. Supp. 3d 1067 (N.D. Cal. 2018) ................................................................... 12, 14

*FTC v. Am. Screening, LLC*,
No. 4:20-CV-1021 RLW, 2022 WL 2752750 (E.D. Mo. July. 14, 2022) ................ 4, 16, 17, 18

*FTC v. Amy Travel Serv., Inc.*,
875 F.2d 564 (7th Cir. 1989)................................................................................... 16, 19

*FTC* v. *Chinery*,
No. CIV.05-3460 GEB, 2007 WL 1959270 (D. N.J. Jul. 5, 2007).................................. 18

*FTC v. Commerce Planet, Inc.*,
No. SACV 09-01324CJC (RNBx), 2010 WL 11673796 (C.D. Cal. Feb. 12, 2010) .......... 18, 19

*FTC v. Consumer Health Benefits Ass'n*,
No. 10-CV-3551, 2012 WL 1890242 (E.D.N.Y. May 23, 2012) ............................................ 3

*FTC v. Freecom Commc'ns, Inc.*,
401 F.3d 1192 (10th Cir. 2005)........................................................................................ 3, 4, 5

*FTC v. Frontier Commc'n, et al.,*
No. 21-4155 (C.D. Cal.), Dkt. 1 ........................................................................................... 27

*FTC v. Hayes*,
No. 4:96-CV-2162 SNL, 1997 WL 416380 (E.D. Mo. Feb. 18, 1997) ............................ 11, 19

*FTC v. Hornbeam Special Situations, LLC*,
308 F. Supp. 3d 1280 (N.D. Ga. 2018) .................................................................................. 4

*FTC v. Innovative Mktg.*,
654 F. Supp. 2d 378 (D. Md. 2009) ........................................................................................ 3

*FTC v. Ivy Capital, Inc.*,
No. 2:11-CV-283 JCM GWF, 2011 WL 2118626 (D. Nev. May 25, 2011) .......................... 16

*FTC v. Johnson*,
No. 2:10-CV-02203-MMD, 2013 WL 2460359 (D. Nev. June 6, 2013)................................ 14

*FTC v. Lights of Am.*,
No. SACV 10-1333, 2011 WL 1515158 (C.D. Cal. Mar. 31, 2011) ..................................... 18

*FTC v. Med. Billers Network, Inc.*,
543 F. Supp. 2d 283 (S.D.N.Y. 2008)...................................................................................... 3

*FTC v. Nat'l Testing Servs., LLC*,
No. 3:05-0613, 2005 WL 2000634 (M.D. Tenn. Aug. 18, 2005) ............................................. 3

*FTC v. Next-Gen, Inc.,*
No. 4:18-cv-00128-DGK, 2018 WL 5310414 (W.D. Mo. Sept. 10, 2018)........................... 3, 4

*FTC v. OMICS Grp. Inc.,*
302 F. Supp. 3d 1184 (D. Nev. 2017).................................................................................... 15

*FTC v. Partners in Health Care Ass'n, Inc.*,
189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016)......................................................................... 18

*FTC v. PayDay Fin. LLC*,
989 F. Supp. 2d 799 (D.S.D. 2013)................................................................................... 15, 16

*FTC v. Publishing Clearing House, Inc.*,
104 F.3d 1168 (9th Cir. 1997)................................................................................................ 17

*FTC v. Sec. Rare Coin & Bullion Corp.,*
931 F.2d 1312 (8th Cir. 1991)............................................................................................ 4, 5, 6

*FTC v. Simple Health Plans, LLC*,
No. 0:18CV62593 (S.D. Fla. Jul. 10, 2019)............................................................................ 15

*FTC v. Skybiz.com, Inc.*,
No. 01-CV-396-K(E), 2001 WL 1673649 (N.D. Okla. Aug. 2, 2001) .......... 3

*FTC v. Sterling Precious Metals, LLC*,
2013 WL 595713 (S.D. Fla. Feb. 14, 2013) .......... 3

*FTC v. Student Aid Center., Inc.*,
281 F. Supp. 3d 1324 (S.D. Fla. 2016) .......... 6

*FTC v. Syngenta*,
No. 22-828 (M.D.N.C.), Dkt. 1 .......... 27

*FTC v. Tax Club, Inc.*,
994 F. Supp. 2d 461 (S.D.N.Y. 2014) .......... 14

*FTC v. USA Fin., LLC*,
415 Fed. Appx. 970 (11th Cir. 2011) .......... 16

*Garrett v. Cassity*,
No. 4:09CV01252 ERW, 2010 WL 5392767 (E.D. Mo. Dec. 21, 2010) .......... 24

*Garrison v. New Fashion Pork LLP,*
No. 18-CV-3073-CJW-MAR, 2020 WL 1811373 (N.D. Iowa, Jan. 9, 2020) .......... 28, 29

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) .......... 1

*Hinrichs v. DOW Chem.ical Co.*,
2020 WI 2, , 389 Wis.2d 669, 937 N.W.2d 37 .......... 7, 8, 9

*Hudak v. Berkley Group, Inc.*,
No. 3:13-CV-00089-WWE, 2014 WL 354676 (D. Conn. Jan. 23, 2014) .......... 10

*In re Nationsmart Corp. Sec. Litig.,*
130 F.3d 309 (8th Cir. 1997) .......... 5, 6

*Kailin v. Armstrong*,
2002 WI App 70, 252 Wis. 2d 676, 643 N.W.2d 132 .......... 7

*Kellogg Sales Co.*,
2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205 .......... 8

*McEwan v. Villferte*, 338 F.R.D. 239 .......... 22

*Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC*
606 S.W.3d 193 (Mo. App. 2020) .......... 23, 24

*Metropolitan St. Louis Equal Hous. Opportunity Council v. Tillman*, .......... 21

*Miller v. Vonage Am., Inc.*,
No. 14-CV-379, 2015 WL 59361 (E.D. Wis. Jan. 5, 2015) .......... 9

*Minn. Laborers Health & Welfare Fund v. Scanlon*,
360 F.3d 925 (8th Cir. 2004) .......... 22

*Nestle Purina PetCare Co. v. Blue Buffalo Co.*,
2015 WL 1782661 (E.D. Mo. Apr. 20, 2015) .......... 5, 6

*NLRB v. Bolivar-Tees, Inc*.,
551 F.3d 722 (8th Cir. 2008) .......... 22, 23, 24

*Olin v. Dakota Access, LLC*,
910 F.3d 1072 (8th Cir. 2018) .......... 7

*Pietoso, Inc. v. Republic Servs., Inc.*,
4:19-CV-00397-JAR, 2021 WL 5177357 (E.D. Mo. Nov. 8, 2021) .......... 13, 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.ust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .......... 9

*Rayner v. Reeves Custom Bldrs., Inc*.,
2004 WI App 231 14 , 277 Wis. 2d 535, 691 N.W.2d 705 .......... 20

*Roberts v. Francis*,
128 F.3d 647 .......... 12

*Select Comfort Corp. v. Sleep Better Store, LLC*,
796 F. Supp. 2d 981 (D. Minn. 2011) .......... 25

*State v. Advance Marketing Consultants, Inc*.,
66 Wis. 2d 706, 225 N.W.2d 887 (1979) .......... 20

*State v. Am. TV & Appliance of Madison, Inc*.,
146 Wis. 2d 292, 430 N.W.2d 709 (1988) .......... 8

*State v. Balistrieri*,
87 Wis. 2d 1, 274 N.W.2d 269 (Ct. App. 1978) .......... 26

*State of Alabama, et al. v. Nationstar Mortgage*,
20-3551 (D.D.C.), Dkt. 1 .......... 27

*United States ex rel. Hayward v. SavaSeniorCare*,
No. 3:11-00821, 2016 WL 5395949 (M.D. Tenn. Sept. 27, 2016) .......... 14, 14

*United States v. Askegard*,
291 F. Supp. 2d 971 (D. Minn. 2003) .......... 21

*United States v. Carell*,
681 F. Supp. 2d 874 (M.D. Tenn. 2010) .......... 22

*Wangard Partners, Inc. v. Graf*,
2006 WI App 115, 294 Wis. 2d 507, 719 N.W.2d .......... 8

*Wilson v. Miller*,
821 F.3d 963 (8th Cir. 2016) .......... 29

*Wright v. Brooke Group. Ltd.*,
No. C99-3090MWB, 2001 WL 34008490 (N.D. Iowa Mar. 9, 2001) .......... 12, 13

**Statutes**

15 U.S.C. § 45 .......... 3, 4
28 U.S.C. § 1367 .......... 28
Wis. Stat. § 100.18 .......... 3, 7, 8, 25, 27
Wis. Stat. § 100.20 .......... 25, 26
Wis. Stat. § 100.263 .......... 26
Wis. Stat. § 100.264 .......... 26
Wis. Stat. § 802.03(2) .......... 8

**Other Authorities**

Fed. R. Civ. P. 8(a) .......... 1, 10
Fed. R. Civ. P. 9(b) .......... 7
Wis. Admin. Code § ATCP ch. 127 .......... 9

## INTRODUCTION

The Court should deny Defendants' three motions to dismiss. *See* Dkt. 50 ("Reed Memo."); Dkt. 55 ("Carroll Memo."); Dkt. 57 ("Jackson Memo."). The Complaint provides more than sufficient notice of the government's claims to satisfy the lenient pleading standards of Federal Rule of Civil Procedure 8(a). Contrary to Defendants' assertion, Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply to this case, which alleges violations of the Federal Trade Commission Act ("FTC Act") and rules and Wisconsin state law, not fraud. Moreover, the Complaint pleads sufficient particularity to put all Defendants on notice of the claims against them to satisfy Rule 9(b) even if it did apply, which it does not. The Court should also reject Defendants' arguments that it should dismiss the Wisconsin claims. These claims are properly filed in federal court, and this Court has supplemental jurisdiction over them. Accordingly, the three motions to dismiss should be denied.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the claim" showing that a plaintiff "is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Under Rule 8, a complaint need not allege an exhaustive roadmap of a plaintiff's claims but must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555). In deciding whether a complaint states a claim, courts must accept as true all factual allegations and read the facts alleged in the light most favorable to the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 249 (1989).

## BACKGROUND

On November 21, 2022, the United States and State of Wisconsin ("Wisconsin") filed a Complaint against seven corporate entities and two trusts ("Corporate Defendants") as well as five individuals ("Individual Defendants") alleging they operated a timeshare exit scheme targeting primarily older Americans. Dkt. 1 (Compl.). The Complaint alleges that Defendants lure consumers to high-pressure sales presentations using deceptive direct mail campaigns. Defendants' mailings include flyers claiming they are "accredited" for timeshare exit services by Defendant Consumer Rights Council, a sham nonprofit Defendants formed to appear more legitimate. *Id*. ¶¶ 43–46.

As the Complaint explains in detail, during the sales presentations, Defendants use false and misleading tactics to convince consumers they must purchase Defendants' services *that day*. For example, Defendants tell consumers that they alone can get consumers out of their timeshares, and that if consumers do not exit their timeshare, they will saddle their children and grandchildren with exorbitant timeshare maintenance fees. To increase the sense of urgency, Defendants have told consumers that the timeshare industry is working to pass legislation that will make it even harder to exit timeshares while also exponentially increasing timeshare maintenance fees. *Id*. ¶¶ 47–57. The Complaint alleges that Defendants sign up consumers for their services without notifying them of their right to cancel the contract. Defendants then charge consumers upfront fees ranging from approximately $5,000 to over $80,000, representing that they will fully refund the fee if Defendants do not get consumers out of their timeshares within a specified time frame. In fact, the Complaint alleges, Defendants pocket the fee, generally fail to get consumers out of their timeshares, and rarely refund the consumers' fees. The Complaint

alleges that Defendants' deceptive and misleading practices have induced consumers into paying more than $90 million for their timeshare exit services. *Id.* ¶¶ 3, 55–70.

Based on these facts, the Complaint contains seven counts alleging that the Corporate Defendants and Individual Defendants violated Section 5 of the FTC Act, 15 U.S.C. § 45(a) and (n), the Rule Concerning Cooling-Off Period for Sales Made at Homes or at Certain Other Locations (the "Cooling-Off Rule"), 16 C.F.R. § 429.1(a) & 15 U.S.C. § 45(a), the Wisconsin Direct Marketing Rule, Wis. Admin. Code § ATCP ch. 127, and Wisconsin's Deceptive Trade Practices Act ("DTPA"), Wis. Stat. § 100.18(1).

## ARGUMENT

### I. Rule 9(b) Does Not Apply to FTC Act Violations.

#### A. The Majority View is that FTC Act Violations Are Not Fraud.

The Complaint alleges that Defendants have violated Section 5 of the FTC Act. *See* Compl., Counts I-III. The overwhelming majority of courts have found that FTC Act claims are governed by Rule 8(a)'s general notice pleading standard, not by Rule 9(b)'s exception for allegations of fraud and mistake, because a government action is fundamentally different than common law fraud. *See FTC v. Freecom Commc'ns, Inc.*, 401 F.3d 1192, 1203, n. 7 (10th Cir. 2005); *FTC v. AFD Advisors, LLC*, No. 13 CV 6420, 2014 WL 274097, at *2 (N.D. Ill. Jan. 24, 2014); *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551, 2012 WL 1890242, at *7 (E.D.N.Y. May 23, 2012); *FTC v. Sterling Precious Metals, LLC*, 2013 WL 595713, at *3 (S.D. Fla. Feb. 14, 2013).[1] At least one other district court in the Eighth Circuit has agreed with the

[1] *See also FTC v. Innovative Mktg.*, 654 F. Supp. 2d 378, 388-89 (D. Md. 2009) (Rule 9(b) does not apply to FTC Act Section 5 claims); *FTC v. Med. Billers Network, Inc.*, 543 F. Supp. 2d 283, 314 (S.D.N.Y. 2008) (same); *FTC v. Nat'l Testing Servs., LLC*, No. 3:05-0613, 2005 WL 2000634, at *2 (M.D. Tenn. Aug. 18, 2005) (same); *FTC v. Skybiz.com, Inc.*, No.01-CV-396-K(E) 2001 WL 1673649, at *4 (N.D. Okla. Aug. 2, 2001) (same).

majority view. *See FTC v. Next-Gen, Inc.*, No. 4:18-cv-00128-DGK, 2018 WL 5310414 (W.D. Mo. Sept. 10, 2018).

This is because "a § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b)." *Next-Gen*, 2018 WL 5310414, at *5 (quoting *Freecom Commc'ns, Inc.*, 401 F.3d at 1203, n. 7). To prevail on its Section 5 claim, the United States "must show that Defendants made material representations likely to mislead consumers acting reasonably under the circumstances in a way that is material." *FTC v. Am. Screening, LLC*, No. 4:20-CV-1021 RLW, 2022 WL 2752750, at *7 (E.D. Mo. July 14, 2022) (internal quotation omitted). "Unlike the elements of common law fraud, the FTC need not prove scienter, reliance, or injury to establish a § 5 violation." *Next-Gen*, 2018 WL 5310414, at *5 (citing *Freecom Commc'ns, Inc.*, 401 F.3d at 1203, n. 7)*; see also FTC v. Hornbeam Special Situations, LLC*, 308 F. Supp. 3d 1280, 1287 (N.D. Ga. 2018) ("Contrasting the elements of fraud with the elements of an FTC Act claim, the difference is palpable and warrants a conclusion that Rule 9(b) does not apply."). Given the differences between Section 5 claims and fraud claims, the majority of courts have concluded that Rule 9(b) does not apply to Section 5 claims.

### B. The Eighth Circuit Would Agree with the Majority View.

The Eighth Circuit has not directly addressed the issue of whether Rule 9(b) applies to Section 5 claims, but Eighth Circuit precedent on both the FTC Act and Rule 9(b) pleading requirements strongly suggest the Eighth Circuit would agree with the majority view that Rule 9(b) does not apply to Section 5 claims.

In *FTC v. Security Rare Coin & Bullion Corp.*, the Eighth Circuit explicitly found that an FTC action is "not a private fraud action" and repeatedly declined to impose fraud-specific pleading requirements on FTC Act claims. 931 F.2d 1312, 1315–16 (8th Cir. 1991). First, the Eighth Circuit found "without merit" the defendant's argument that because the complaint did

not allege that certain conduct violated Section 5, the FTC's pleading did not satisfy Rule 9(b)'s pleading requirement. *Id.* at 1315. Rather than entertaining the defendant's argument that the FTC's Section 5 claims were subject to heightened pleading standards, the Eighth Circuit reasoned that the conduct at issue was "within the ambit" of the pleading. *Id.*

Second, the Eighth Circuit held that Section 13 of the FTC Act did not require proof of each victim's subjective reliance, finding:

> **This is not a private fraud action**, but a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors. It would be inconsistent with the statutory purpose for the court to require proof of subjective reliance by each individual consumer.

*Id.* at 1316 (emphasis added). Other courts, including the Tenth Circuit, relied on this reasoning to find that Section 5 claims are not fraud claims subject to Rule 9(b). *See Freecom Commc'ns.*, *Inc.*, 401 F.3d at 1203, n. 7. Imposing extra pleading requirements reserved for fraud on FTC Act claims simply does not make sense and also thwarts the purpose of the Act.

Eighth Circuit case law applying Rule 9(b) further suggests it does not apply to FTC Act claims. In *In re Nationsmart Corp. Securities Litigation*, the Eighth Circuit held that Rule 9(b) does not apply to claims brought under Section 11 of the Securities Act because "proof of mistake or fraud is not a prerequisite to establishing liability under § 11 [of the Act.]" 130 F.3d 309, 314 (8th Cir. 1997). The Eighth Circuit reasoned:

> [A] pleading standard which requires a party to plead particular facts to support a cause of action that does not include fraud or mistake as an element comports neither with Supreme Court precedent nor with the liberal system of 'notice pleading' embodied in the Federal Rules of Civil Procedure. … The Supreme Court has held that federal courts may not apply the heightened pleading standard of Rule 9(b) outside the two specific instances – fraud and mistake – explicitly found in the rule. *Id.*

Likewise, in *Nestle Purina PetCare Co. v. Blue Buffalo Co.,* another court in this District declined to apply Rule 9(b) to a claim under the Lanham Act because "[p]roof of fraud is not a

prerequisite to establishing liability under the Lanham Act." No. 4:14-CV-859 RWS, 2015 WL 1782661, at *8 (E.D. Mo. Apr. 20, 2015). The reasoning in these cases establishes that Section 5 of the FTC Act does not require proof of fraud and Rule 9(b) does not apply.

Whether a complaint alleges *some* fraudulent conduct does not change this analysis. When fraud is not an essential element of a claim, any fraud allegation is merely "surplusage" and "the complaint should not [be] dismissed for pleading more than the Federal Rules required." *In re Nationsmart Corp. Sec. Litig.*, 130 F.3d at 318; *see also Nestle,* 2015 WL 1782661, at *8 (declining to apply Rule 9(b) even though the complaint "[did] include allegations of fraud in its claims" because "successful resolution of those claims [did] not depend on those allegations").

Given the Eighth Circuit's previous reasoning that an FTC Act claim is *not* fraud and should not be subject to additional pleading requirements in *Security Rare Coin & Bullion Corp.*, and that Rule 9(b) only applies to statutory claims that *require* fraud in *In re Nationsmart Corp.*, the Eighth Circuit would likely agree with the majority view that Rule 9(b) does not apply to Section 5 claims.

**C. Defendants' Arguments Do Not Dictate a Different Result.**

To support their Rule 9(b) argument, Defendants primarily rely on a *minority* view held largely by district courts in the Ninth Circuit. *See* Carroll Memo. at 2–3; Jackson Memo. at 2–3; Reed Memo. at 2–3. These cases have no precedential value here and conflict with Eighth Circuit case law interpreting the FTC Act and declining to apply Rule 9(b)'s heightened pleading standard. *See FTC v. Student Aid Ctr., Inc.*, 281 F. Supp. 3d 1324 (S.D. Fla. 2016) (rejecting the reasoning in a district court case in the Central District of California that applied Rule 9(b) to FTC Act claim as "neither persuasive nor binding" on the court). The Eighth Circuit cases cited by Defendants applying Rule 9(b) to *state statutes* – like the Missouri Merchandising Practices

Act and the Iowa Consumer Fraud Statute – are also inapplicable in that they rested on the courts' interpretation of inapposite state substantive law, rather than federal statutory actions. *See, e.g.*, Reed Memo. at 3 (citing *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) ("[w]hether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened pleading standard, is a matter of substantive state law") (internal quotations omitted).

**D. Rule 9(b) Does Not Apply to the Wisconsin State Law Violations.**

Certain Defendants argue that the State of Wisconsin's misrepresentation claims are not pleaded with the necessary particularity under Rule 9(b). *See* Carroll Memo. at 7–10; Reed Memo. at 2–3. But Rule 9(b) also does not apply to any of the Wisconsin claims.

The DTPA is a statutory, strict-liability misrepresentation statute lacking key elements of "fraud." "Whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened pleading standard, is a matter of substantive state law." *Olin*, 910 F.3d at 1075 (internal quotations omitted). And the Wisconsin Supreme Court has specifically held that "the heightened pleading standard set forth by Wis. Stat. § 802.03(2) for claims of fraud does not apply to claims made under Wis. Stat. § 100.18."[2] *Hinrichs v. DOW Chem. Co.*, 2020 WI 2, ¶¶ 6, 83, 389 Wis.2d 669, 681, 937 N.W.2d 37, 43. The Supreme Court in *Hinrichs* based its conclusion on the longstanding recognition that "Wis. Stat. § 100.18 creates a new cause of action and does not simply provide a remedy for common law fraud claims." *Hinrichs*, 389 Wis. 2d 669, ¶ 77 (citing *Kailin v. Armstrong*, 2002 WI App 70, ¶ 42, 252 Wis. 2d 676, 643 N.W.2d 132). The state supreme court in *Hinrichs* further explained that "[a]lthough entitled 'Fraudulent representations,' the text of Wis. Stat. § 100.18 does not include the word 'fraud.' The title of a

[2] Wis. Stat. § 802.03(2) is nearly identical to Rule 9(b) and provides in relevant part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) provides: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

statute may be helpful in resolving ambiguities in a statute, but it is not part of the statute . . . we cannot rely on the title of 'fraudulent representations' to determine that § 100.18 is a 'fraud' statute to which § 802.03(2) applies." *Id.*, ¶ 76.

Under Wisconsin law, only fraud claims or claims in which a finding of fraud is "essential" are subject to the heightened pleading standard for "fraud" in Wis. Stat. § 802.03(2). *Wangard Partners, Inc. v. Graf*, 2006 WI App 115, ¶ 36, 294 Wis. 2d 507, 719 N.W.2d 507. The elements of a claim under Wis. Stat. § 100.18(1) differ significantly from common law fraud. Wisconsin's Wis. Stat. § 100.18(1) misrepresentation claim has two elements: (1) there must be an advertisement or announcement; and (2) that advertisement must contain a statement which is "untrue, deceptive or misleading." *State v. Am. TV & Appliance of Madison, Inc.*, 146 Wis. 2d 292, 300, 430 N.W.2d 709 (1988).[3] Unlike fraud, there is no intent to deceive element. *See Kaloti Enter. Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 699 N.W.2d 205 (describing elements of common law fraud including that "the defendant made the representation with the intent to defraud and to induce another to act upon it").

The cases cited by Defendants do not support applying Rule 9(b) to Wisconsin's statutory misrepresentation claim. *See* Reed Memo. at 2–3. Defendants rely on *Byrd v. Landowski*, 2010 WI App 120, ¶ 7, 329 Wis. 2d 271, 789 N.W.2d 755, but *Byrd* is an unpublished decision of the

[3] Defendants erroneously state that there is an additional element to Wisconsin's claim under Wis. Stat. § 100.18(1): an allegation of pecuniary loss by consumers. Carroll Memo at 8; Reed Memo at 13. However, Defendants are conflating the elements of a *public enforcement* claim with the somewhat different elements required of *private* litigants. Private plaintiffs bring their claims pursuant to Wis. Stat. § 100.18(11)(b), which specifically limits such claims to "[a]ny person suffering pecuniary loss because of a violation of this section by any other person . . . ." There is no reference to pecuniary loss in the statutory text that defines the legal violation, Wis. Stat. § 100.18(1), nor in the enforcement provisions underlying a *public* action, Wis. Stat.s §§ 100.18(11)(a), (d). Restitution of pecuniary losses suffered by consumers in a public enforcement action is a remedial measure subject to judicial discretion "provided proof thereof is submitted to the satisfaction of the court;" it is not an element of the underlying legal claim that must be pleaded. Wis. Stat. §§ 100.18(11)(d); *see also State v. Going Places Travel Corp*. ("[A] circuit court's decision to award a particular amount of restitution is discretionary.") (referencing Wis. Stat. §§ 100.18 and 100.20). But even though pleading pecuniary loss is not required in a state enforcement action, the *Complaint* here contains numerous allegations that Defendants misrepresentations caused such losses to consumers.

Wisconsin Court of Appeals, and this holding was overruled by the subsequent state supreme court decision in *Hinrichs*, discussed above. Defendants improperly rely on the federal district court's decision in *American Orthodontics* where the court concluded that a plaintiff's DTPA claim satisfied Rule 9(b), but there is no discussion in that decision whether or why the rule applied. *See Am. Orthodontics Corp. v. Epicor Software Corp.*, 746 F. Supp. 2d 996, 999 (E.D. Wis. 2010). Finally, Defendants cite *Miller v. Vonage America*, an unreported 2015 federal district court decision which stated (also without discussion) that "[b]ecause a claim under the DTPA sounds in fraud, it must be pleaded with particularity." *Miller v. Vonage Am., Inc.*, No. 14-CV-379, 2015 WL 59361, at *5 (E.D. Wis. Jan. 5, 2015). However, the court in *Miller* relied for this conclusion on a 2011 Seventh Circuit opinion that dealt with an *Illinois* statute, not Wisconsin's DTPA. *Miller*, 2015 WL 59361, at *5 (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011)). The *Miller* court also cited the *Byrd* case, which as noted above was recently overruled by the Wisconsin Supreme Court in *Hinrichs*. Thus, none of the cases relied on by Defendants should lead this Court to conclude that Rule 9(b) applies to the Wisconsin DTPA claim.

Nor should the Court conclude that Rule 9(b) applies to any of Wisconsin's Direct Marketing Rule claims. Those claims are not "fraud" claims either, but rather require certain types of disclosure or conduct on the part of sellers of consumer goods and services. Where they do forbid misrepresentation (*e.g.,* Count IV of the Complaint), they contain no scienter element.

## II. The Complaint Satisfies Rule 8(a).

The Complaint here amply satisfies Rule 8(a)'s notice pleading requirements. The Complaint outlines a detailed playbook of the misrepresentations and unfair business practices by which Defendants' timeshare exit scheme allegedly violates Sections 5(a) and (n) of the FTC Act (Counts I and II), the Wisconsin Direct Marketing Rule (Count IV), and DTPA (Count VII).

*See* Compl. ¶¶ 42–70. The Complaint also describes in depth Defendants' failures to provide consumers with the disclosures required by statute and the Cooling-Off Rule (Count III) regarding their rights to cancel their contracts, and the Wisconsin Direct Marketing Rule (Count V). *See* Compl. ¶¶ 58–63. Lastly, the Complaint specifically identifies Defendants' failure to properly disclose that consumers were being invited to sales presentations in their mail solicitations, as required by the Wisconsin Direct Marketing Rule (Count VI). *See* Compl. ¶¶ 43–46, 94.

Rule 8 does not require a complaint to be plead with specificity, and so does not require a complaint to identify which illegal acts were conducted by which Defendants. *See AFD Advisors,* 2014 WL 274097, at *3 (applying the Rule 8(a) standard and rejecting argument that plaintiff's complaint should be dismissed for failure to "pinpoint which acts or practices were violated by which …individuals and companies named in the Complaint"). Collectively referring to multiple defendants' role in a joint scheme simply alerts defendants that identical claims are asserted against each defendant. *See Nestle*, 2015 WL 1782661, at *9 (citing *Hudak v. Berkley Group, Inc.*, No. 3:13-CV-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014)). Nevertheless, the Complaint also details each Individual Defendant's role in the timeshare exit scheme and defines how each is liable under the FTC Act and the Wisconsin state claims. *See* Compl. ¶¶ 25–29. These detailed allegations provide much more than the "short and plain statement of the claim" required by Rule 8 and are more than sufficient to give Defendants "fair notice" of the grounds for the Complaint. *See Erickson*, 551 U.S. at 93.

## III. Alternatively, the Complaint Sufficiently Pleads Particularity under Rule 9(b).

Defendants wrongly assert that the Complaint must satisfy Rule 9(b) and does not do so. As discussed above, this is plainly incorrect, goes against the great weight of authority, and has

no support from case law within the Eighth Circuit. But even if the Complaint were required to satisfy the heightened Rule 9(b) standard, the detailed Complaint here meets that standard.

**A. The Complaint Is Pled with Particularity.**

The Complaint here satisfies Rule 9(b)'s heightened pleading requirement by alleging in exhaustive detail the who, what, when, where, and how of the illegal conduct on which the Complaint is based. The Complaint alleges *who* perpetrated the timeshare exit scam—identifying the eleven corporate defendants and five individual defendants, and their role in the scam (Compl. ¶¶ 10–30). The Complaint alleges *where* each corporate defendant operates (with the exception of the alter ego Trust Defendants) (*id*. ¶¶ 10–18); *where* Defendants made false and misleading statements and conducted other unlawful business practices—via mail flyers mailed to consumers in Wisconsin and other states and at sales presentations, typically at a local hotel or restaurant, in Wisconsin, Missouri, and other states across the United States (*id.* ¶¶ 42–46). The Complaint alleges *when* the illegal conduct occurred—"since at least late 2018" (*id.* ¶ 42).

With even greater particularity, the Complaint alleges *what* misrepresentations and other practices violated the FTC Act, the DTPA, and Wisconsin Direct Marketing Rule, and *how* Defendants engaged in them, including highly specific descriptions of Defendants' deceptive mail campaigns to consumers (*id.* ¶¶ 43–46), sales presentations to consumers (*id.* ¶¶ 47–57), contracts with consumers (*id.* ¶¶ 58–63), and failures to fulfill their promises to consumers (*id.* ¶¶ 64–70). These details provide more than enough detail for each Defendant to prepare a responsive pleading. *See, e.g.*, *FTC v. Hayes*, No. 4:96-CV-2162 SNL, 1997 WL 416380, at *3 (E.D. Mo. Feb. 18, 1997) (holding a complaint sufficient under Rule 9(b) because it "specifically identifies the defendants, their alleged misrepresentations, the asserted violations of the FTCA and the time period in which these violations allegedly occurred").

Defendants' contention that the Complaint lacks sufficient details as to these factors is baseless. Defendants' arguments also generally misunderstand the Rule 9(b) pleading standard. Rule 9(b) does not necessitate that every "who, what, where, when" factor be plead with particularity, but rather that the allegations are not conclusory when read as a whole. *See Frick's Meat Prods., Inc. v. Bond Equip. Corp.*, No. 4:05CV1409RWS, 2006 WL 286976, at *1 (E.D. Mo. Feb. 6, 2006) (citing *Roberts v. Francis*, 128 F.3d 647, 651 n. 5 (8th Cir.1997)) ("[W]e do not hold that a plaintiff must show all of these factors under Rule 9(b) to plead fraud with sufficient particularity. A plaintiff must state enough so that his/her pleadings are not merely conclusory.").

Thus, a complaint satisfies Rule 9(b) if it notifies defendants which conduct is alleged to be fraudulent—regardless of whether the complaint pinpoints the specific date and place. *See Wright v. Brooke Grp. Ltd.*, No. C99-3090MWB, 2001 WL 34008490, at *2 (N.D. Iowa Mar. 9, 2001) ("The fact that [Plaintiff] does not allege where or when he saw or read the advertisements is not fatal here, because the defendants know which of its advertisements [Plaintiff] alleges are fraudulent."). And in a "large-scale protection action" such as this, even courts in the Ninth Circuit that apply Rule 9(b) to such cases have recognized that the government need only provide "several examples of allegedly fraudulent statements" to satisfy Rule 9(b). *See FTC v. Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d 1067, 1078 (N.D. Cal. 2018). Again, no overly specific "when" and "where" is required. *Id*. (complaint alleging FTC Act violations "in the United States" and "2014 onward" satisfied Rule 9(b) when specific misrepresentations identified).

Here, not only does Plaintiffs' 31-page complaint provide a detailed roadmap of Defendants' illegal conduct, but it also cites multiple examples of Defendants' specific misrepresentations and violative conduct. As examples of the specific misrepresentations and

unfair business practices that violate the FTC Act (Counts I and II), the Wisconsin Direct Marketing Rule (Count IV), and DTPA (Count VII), the Complaint alleges that Defendants:

- Sent a flyer—*pictured in the Complaint*—promising consumers can "[l]earn how to recover 100% of [their] timeshare's full purchase price" at an "information session" (Compl. ¶ 43);
- Show consumers charts purporting to show their annual maintenance fees over a thirty-year period, in one instance, representing to a consumer that she or her family members would end up paying a total of $174,110 in maintenance fees over 30 years (*id.* ¶ 53);
- Pressure consumers into signing up for their timeshare exit services by telling them "that if they walk out of the door, their opportunity to exit their timeshare will be lost forever," or "accusing them of wasting Defendants' time and just coming for the free meal" (*id.* ¶ 57); and
- Include a "MONEY BACK GUARANTEE" provision in their consumer contracts promising, falsely, a full refund if Defendants' failed to exit consumers' timeshares (*id.* ¶ 58).

The Complaint also identifies specific conduct that violates the Cooling-Off Rule (Count III) and Wisconsin's three-day right to cancel provision in the Wisconsin Direct Marketing Rule (Count V)—including that Defendants' contract affirmatively states that it "does NOT have a cancellation period." *See id.* ¶¶ 59–63. And the Complaint identifies specific omissions in Defendants' direct mail campaigns that violate the Wisconsin Direct Marketing Rule (Count VI)—*i.e.*, Defendants' mail solicitations only informed consumers that they were invited to "information sessions," not sales presentations where they would be sold timeshare exit services. *See id.* ¶¶ 43–46, 94. As for the Trusts, since the Complaint pleads that they are alter egos of other Corporate Defendants, all of these elements are vicariously satisfied for them too.

Given these and the myriad other specific misrepresentations and violative conduct identified in the Complaint, Defendants know which conduct the Plaintiffs allege form the basis of its claims. Rule 9(b) requires nothing more. *See Wright*, 2001 WL 34008490, at *2; *see also Pietoso, Inc. v. Republic Servs., Inc.*, 4:19-CV-00397-JAR, 2021 WL 5177357, at *6 (E.D. Mo.

Nov. 8, 2021) ("The special nature of fraud does not necessitate anything other than notice of the claim; it simply necessitates a higher degree of notice, enabling the defendant to respond specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct.").

**B. Defendants' "Group" Pleading Arguments Fail.**

Defendants' arguments that the Complaint impermissibly "groups" or "lumps" Defendants' conduct together also fail. *See* Jackson Memo. at 6–7; Carroll Memo. at 10. The Complaint alleges that the Corporate Defendants operate *together* as a common enterprise and so "group" pleading is appropriate here. Where, as here, "a common enterprise is alleged, allegations regarding the specific conduct of each corporate defendant are not required," even by courts applying the Rule 9(b) pleading standard. *See Am. Fin. Benefits Ctr.*, 324 F. Supp. 3d at 1079; *FTC v. Johnson*, No. 2:10-CV-02203-MMD, 2013 WL 2460359, at *5 (D. Nev. June 6, 2013) ("That the FTC does not allege with particularity the actual involvement of each shell entity in the common enterprise is not fatal.").

This is because under the common enterprise theory, each corporate Defendant is liable for the others' actions. To require wrongful acts be attributed to a specific Defendant would undermine the Complaint's theory of liability. Indeed, "[t]he very nature of [the common enterprise] theory is that corporate entities that are a part of the common enterprise are liable for the conduct of other entities in the enterprise, regardless of whether the particular entity engaged in the behavior at issue." *FTC v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014); *see also United States ex rel. Hayward v. SavaSeniorCare*, No. 3:11-00821, 2016 WL 5395949, at *14 (M.D. Tenn. Sept. 27, 2016) (refusing to dismiss False Claims Act complaint and finding Rule 9(b) met where complaint "suggests that the Defendants, acting in concert, created and

implemented policies in an effort to wrongfully enlarge Medicare billing").[4] Allowing "group" pleading for members of a common enterprise is intended to avoid injustice and "prevent[s] individuals and companies from using corporate structures to circumvent the FTCA courts." *See FTC v. PayDay Fin. LLC*, 989 F. Supp. 2d 799, 808 (D.S.D. 2013).

Thus, pleading Defendants' "group" culpability for the allegations is a feature of common enterprise liability, not a defect. Defendants' arguments that the Complaint insufficiently pleads the Corporate Defendants' conduct with particularity fails. *See FTC v. OMICS Grp. Inc.*, 302 F. Supp. 3d 1184, 1195 (D. Nev. 2017) ("Under the common enterprise theory, Defendants' contention that the Complaint fails for not particularizing allegations to each Corporate Defendant is misplaced, as each are liable for the scheme as a whole."); *FTC v. Simple Health Plans, LLC*, No. 0:18CV62593, Paperless Order Denying Mot. to Dismiss, Dkt. 182 (S.D. Fla. Jul. 10, 2019) ("The FTC specifically pleads that Defendant Dorfman and the Corporate Defendants operated as a 'common enterprise.' . . . As such, the Complaint does not impermissibly 'lump' the Defendants. Rather, it makes specific allegations that can be attributed to all members of the common enterprise.").

### C. The Complaint Adequately Pleads Individual Liability.

Defendants' arguments that the Complaint fails to allege individual liability for the FTC Act and Wisconsin claims also fail. *See* Jackson Memo. at 5–8; Carroll Memo. at 10–12; Reed Memo. at 4–9. The Complaint alleges facts showing not only many Individual Defendants' personal involvement in the unlawful timeshare exit scheme, but also that every Individual

[4] The Complaint alleges that the Corporate Defendants operate as a common enterprise and operate through "an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that have commingled funds." Compl. ¶ 30.

Defendant had authority to control and had knowledge of the unlawful activity—which sufficiently pleads liability for both FTC Act and Wisconsin law violations.

**1. The Complaint Pleads Individual Liability for FTC Act Violations.**

In order to state a claim for injunctive and monetary relief against an individual under the FTC Act, the government must allege that an individual (1) directly participated in the acts or practices or had the authority to control the acts or practices and (2) had some knowledge of the acts or practices. *Am. Screening, LLC*, 2022 WL 2752750, at *8. Authority to control may be evidenced by "active involvement in the business affairs and the making of corporate policy, including assuming the duties of a corporate officer." *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). Having signing authority on corporate accounts or acquiring services on behalf of the corporation is also evidence of authority to control. *FTC v. USA Fin., LLC*, 415 Fed. Appx. 970, 975 (11th Cir. 2011). The FTC Act does not require a showing of an intent to defraud. *See Amy Travel Serv., Inc.*, 875 F.2d at 574. Actual knowledge, reckless indifference, of awareness of a high probability of deceptive acts or practices all satisfy the knowledge requirement. *See PayDay Fin. LLC*, 989 F. Supp. 2d at 809–10.

Here, the Complaint pleads facts that plausibly render all Individual Defendants liable. The Complaint alleges that each Individual Defendant "has been an owner, officer, director, member and/or manager" of certain Corporate Defendants, and "has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth [the] Complaint." Compl. ¶¶ 25–29. Courts—even those that apply Rule 9(b) to FTC Act claims—have held this allegation alone sufficient to state a claim for individual liability. *See, e.g.*, *FTC v. Ivy Capital, Inc.*, No. 2:11-CV-283 JCM GWF, 2011 WL 2118626, at *5–*6 (D. Nev. May 25, 2011) (allegation that individual defendants "are each officers and/or directors" of the corporate defendant, "and that each formulated, directed, controlled, had the authority to control, or

participated in the acts and practices set forth in the complaint" adequately stated a claim of individual liability).

The Complaint also details Individual Defendants' officer roles within the company, active involvement with business matters, and authority to sign documents on behalf of the company—all of which show their authority to control the company. *FTC v. Am. Screening, LLC*, 2022 WL 2752750, at *9 (E.D. Mo. Jul. 14, 2022) (internal quotations omitted) (holding "the assumption of officer duties" and "active involvement with business matters" both demonstrate authority to control a company); *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir. 1997) (assuming role of company president with authority to sign documents on behalf of corporation show defendant had "the requisite control over the corporation.").

For example, the Complaint alleges:

- Carroll is listed on corporate documents as President and CEO of Square One Group; has participated in timeshare exit sales presentations; is a signatory on Corporate Defendants' bank accounts; regularly is present at Corporate Defendants' business premises; has communicated with consumers about their timeshares; hires employees; oversaw the sales teams; and directs day-to-day business operations. Compl. ¶ 25.

- George Reed was regularly present at Corporate Defendants' business premises, hired employees, directed day-to-day business operations, and is a signatory on Corporate Defendants' bank accounts. *Id.* ¶ 26.

- LouAnn Reed maintained the title of President, Secretary, and Director of SODG and was a signatory on Corporate Defendants' bank accounts. *Id.* ¶ 27.

- Jackson manages sales teams and is regularly present at timeshare exit sales presentations with consumers. Jackson regularly is present at Corporate Defendants' business premises and directs day-to-day business operations. He routinely responds to consumer complaints. *Id.* ¶ 28.

- Balderas maintains the title of Director and Vice President of Square One Group, LLC and National Director of CLP. Balderas manages the sales teams, frequently is present at timeshare exit sales presentations, routinely delivers initial group

> presentations at the start of sales meetings with consumers, assists directly in selling timeshare exit services to consumers, and routinely responds to consumer complaints. *Id.* ¶ 29.

The Complaint also permits a plausible inference of each Individual Defendants' knowledge of, or at least reckless indifference to, the alleged misconduct. Defendants' arguments that the Complaint does not sufficiently use the magic word "knowledge" when referring to the Individual Defendants have no merit. Knowledge—which must only be pled under Rule 8's general pleading standard even where Rule 9(b) may apply—may be inferred from the defendant's active involvement with business matters and control over the company. *See Am. Screening,* 2022 WL 2752750, at *9 ("Considering the extent of [the defendant's] control, no reasonable jury could conclude he was unaware of the company's wrongful acts."); *FTC v. Partners in Health Care Ass'n, Inc.*, 189 F. Supp. 3d 1356, 1367 (S.D. Fla. 2016) ("An individual's degree of participation in the business is probative of knowledge."); *see also FTC v. Lights of Am.*, No. SACV 10-1333, 2011 WL 1515158 , at *3 (C.D. Cal. Mar. 31, 2011) (collecting cases showing that "knowledge" is "subject to the general pleading standard of Rule 8(a) rather than the heightened pleading standard of Rule 9(b) because these allegations are relevant to the availability of a particular remedy (*i.e.* restitution), not to the sufficiency of the underlying cause of action").

Knowledge also may be inferred from the defendant's role as a corporate officer if it is possible he would have learned of the illegal conduct in that role. *See FTC* v. *Chinery*, No. CIV.05-3460 GEB, 2007 WL 1959270, at *7 (D. N.J. Jul. 5, 2007) (FTC sufficiently alleged a corporate officer's requisite knowledge for individual liability under the FTC Act because her position "could have involved Defendant's awareness of the [illegal] advertising"). Indeed, as one court has observed, "the most important fact for individual liability under the Section of the

FTC Act" is that the individual is "the . . . director of the company" that engaged in the allegedly unlawful practices. *FTC v. Commerce Planet, Inc.*, No. SACV 09-01324CJC (RNBx), 2010 WL 11673796, at *2 (C.D. Cal. Feb. 12, 2010). That is because, "[b]ased on judicial experience and common sense, it is certainly plausible for a president of a company to know about and have authority to control" the company's deceptive business practices. *Id*.

As illustrated above, for each individual defendant, the Complaint alleges active involvement in business matters, control of the company, and/or their role as a high-level officer in the company. At the pleading stage, these allegations, taken together, are sufficient to show each Individual Defendant's knowledge of, or reckless indifference to, the Corporate Defendants' illegal conduct. The Complaint also alleges Carroll's, Jackson's, and Balderas's specific roles in communicating with consumers about their timeshares, fielding consumer complaints, and/or participating in sales presentations—all of which further illustrate awareness of the timeshare exit scheme alleged in the Complaint.

Possibly recognizing that their own individual liability is straightforward, Defendants attempt to complicate this analysis by invoking Rule 9(b) and arguing the Complaint does not specifically allege the individual's involvement in the illegal conduct. *See* Carroll Memo. at 10–12; Reed Memo. at 6–9; Jackson Memo. at 4–8. But Rule 9(b) does not change the well-established standard for individual liability under the FTC Act. And while the Complaint describes many Individual Defendants' specific roles in the illegal conduct, this is not required to establish individual liability. Individuals "may be liable for corporate violations of the FTCA even if [they] did not engage in any deceptive acts or practices [themselves]." *See Hayes*, 1997 WL 416380, at *2 (citing *Amy Travel Serv., Inc.*, 875 F.2d at 573–74).

Because the Complaint pleads facts that show each Individual Defendant either had authority to control *or* directly participated in the practices at issue and had some knowledge of the wrongful acts or practices, it adequately alleges that the Individual Defendants are liable under the FTC Act.

**2. The Complaint Pleads Individual Liability for the Wisconsin State Allegations.**

Like with individual liability for the FTC Act, under Wisconsin law, individuals may be held liable for corporate acts where control over the company is shown. *See State v. Advance Marketing Consultants, Inc.*, 66 Wis. 2d 706, 714, 225 N.W.2d 887 (1979). In *Advance Marketing,* Wisconsin commenced an action under the DTPA against a corporate entity and the individual who "operated" the company. *Id.* at 708, 714. In ruling that the trial court could exercise personal jurisdiction over the individual defendant, the *Advance Marketing* court found that Wisconsin's complaint stated a cause of action against the individual defendant because a corporation's acts can be imputed to the individual, based on his control of the company. *Id.* at 714 (citing *Flakall Corp. v. Krause*, 269 Wis. 310, 311, 70 N.W.2d 8 (1955)). Because the Complaint pleads facts that show each individual had authority to control the Corporate Defendants, *see supra* pp. 16–18, it adequately pleads liability for the Wisconsin state allegations.

Defendants' individual liability under the FTC Act also supports liability under the Wisconsin state allegations. Wisconsin courts have examined the test for individual liability under the FTC Act to help determine whether an individual is liable under similar state consumer protection laws. *See, e.g.*, *Rayner v. Reeves Custom Bldrs., Inc.*, 2004 WI App 231, ¶ 14 n.7, 277 Wis. 2d 535, 544 n.7, 691 N.W.2d 705.

**D. The Complaint Sufficiently Pleads Particularity as to Time, and Defendants' Statute of Limitations Arguments Fail.**

Defendants' arguments that the Complaint should be dismissed under Rule 9(b) based on the FTC Act's and DTPA's three-year statute of limitations misunderstands basic pleading standards. *See* Carroll Memo. at 14. The plain language of the Complaint asserts that the alleged conduct occurred "since at least late 2018" and continued *since* that time frame until the Complaint was filed. At the very least, the Complaint's alleged time frame, when construed favorably to the Plaintiffs, allows a plausible inference that the conduct continued well *after* 2018. A motion to dismiss should be denied when there is a plausible reading that the illegal conduct continued within the limitations period. *See Ashcroft*, 556 U.S. at 678 ("A claim has facial plausibility [surviving a motion to dismiss] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Metropolitan St. Louis Equal Hous. Opportunity Council v. Tillman*, No. 7-04114-CV-C-NKL, 2007 WL 3046585, at *2 (W.D. Mo. Oct. 16, 2007) (denying Rule 12(b)(6) motion to dismiss when "EHOC's complaint does not contain – and Johnson does not allege it contains – any facts on its face establishing that it is conclusively time barred").

Even if the Complaint did not adequately plead the time frame of Defendants' conduct, which it does, this would not justify dismissal of the Complaint. Statute of limitations is an affirmative defense, and so defendants bear the burden of proof that the Plaintiffs' claims are barred by the statute of limitations. *See United States v. Askegard*, 291 F. Supp. 2d 971, 977 (D. Minn. 2003). Here, "because dismissal limitations issues often depend on questions of fact, the court should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Dida v. Ascension Providence Hosp.,* No. 4:22-CV-0508-AGF, 2022 WL 2438347, at *2 (E.D. Mo. July 5, 2022). Thus, it would be premature to dismiss the Complaint

on statute of limitations grounds now.

**E. The Complaint Adequately Pleads Liability for the Trusts.**

Defendants wrongly argue that the Complaint's alter ego allegations against the two Trust Defendants are conclusory and fail to satisfy Rule 9(b). *See* Reed Memo. at 9–11; Carroll Memo at 14–15. Even if Rule 9(b) applies, which it does not, *see supra* pp. 3–10, the alter ego allegations in the Complaint satisfy Rule 9(b), and Defendants' arguments to the contrary are flawed.

Initially, both sets of Defendants assume – without discussion or citation to authorities – that Missouri state law applies to the alter ego analysis. *See* Reed Memo. at 9; Carroll Memo. at 14 (applying three-part Missouri state alter ego standard). But that is incorrect. When the cause of action is based on a federal question, federal common law governs the alter ego analysis. *See, e.g., NLRB v. Bolivar-Tees, Inc.*, 551 F.3d 722, 727 (8th Cir. 2008) (citation omitted) (holding that corporate veil piercing in suit alleging violation of National Labor Relations Act – a federal statute – "'‘is a question of federal law [because] it arises in the context of a federal labor dispute'"); *Minn. Laborers Health & Welfare Fund v. Scanlon*, 360 F.3d 925, 928 (8th Cir. 2004) (applying federal common law to alter ego test in ERISSA case); *Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1056 (D. Minn. 2021) (holding that federal common law applies to alter ego analysis in suit alleging violations of federal WARN Act); *United States v. Carell*, 681 F. Supp. 2d 874, 890 (M.D. Tenn. 2010) ("federal common law determines the parameters of the alter ego doctrine where the underlying cause of action is based on a federal question"). The supplemental Wisconsin state law claims do not change this. *Compare McEwan v. Villferte*, 338 F.R.D. 239, 242 n. 2 (N.D. Ill. 2021) (applying federal privilege law "even where the Court exercises supplemental jurisdiction over state law claims").

The Eighth Circuit has a two-part test for veil-piercing in the corporate context under federal common law.[5] First, courts look to whether there was "such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct." *Bolivar-Tees*, 551 F.3d at 728 (quotation omitted). Second, courts consider if "adherence to the corporate fiction [would] sanction a fraud, promote injustice, or lead to an evasion of legal obligations." *Id*. (quotation omitted). Here, the Complaint's allegations explain in detail how the Carroll Trust, the Corporate Defendants, and Carroll have a unity of interest and domination by Carroll and how the Reed Trust, the Corporate Defendants, and the Reeds had a unity of interest and domination by the Reeds (up until they sold Mainline to Carroll). The Complaint pleads, for example, that:

- The Reed Trust and Carroll Trust are alter egos of the Reeds and Christopher Carroll respectively, and the Trusts owned or have owned and are alter egos of Mainline and Farmington, the parent companies of all other corporate Defendants (Compl. ¶¶ 20–23);

- The Trusts "used Mainline, Farmington, and the Subsidiary Defendants as their instrumentality or business conduit and controlled their assets for the benefit of the Trusts" (*id.* ¶ 24);

- "Carroll, George Reed, and the Trusts together controlled Mainline, Farmington, and the Subsidiaries through Carroll's and Reed's leadership roles at these companies, and the Subsidiaries through Carroll's and Reed's leadership roles at these companies, and through their control over these companies' bank accounts" (*id.* ¶ 23);

- "Carroll, the Carroll Trust, Mainline, Farmington, and the Subsidiaries have a unity of interest and have disregarded any separate entity" (*id.* ¶ 21); and

- The transfer of Mainline stock to the Carroll Trust was not an arms-length transaction and was for less than fair market value (*id.* ¶ 21).

[5] This test is shorter than the three-part test that Defendants assert applies under Missouri state law. *See Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC*, (listing three-part veil piercing test for (1) control such that the entity has no separate existence, (2) that defendant used the control to commit a wrong or violate a statutory or positive legal duty, and (3) which proximately caused the injury or unjust lost in the action).

These and other facts in the Complaint show unity of interest between and a lack of respect for the separate entities of the trusts, the Corporate Defendants, and the Individual Defendants who control them, meeting the first element of the federal common law alter ego test. *See Bolivar-Tees*, 551 F.3d at 728. Second, the Complaint pleads that it would promote injustice to allow the fiction that the Trusts were viewed as separate entities (Compl. ¶ 24), because it would allow Defendants to evade their obligations to the United States and Wisconsin. This meets the second element of the federal common law alter ego test. *See Bolivar-Tees*, 551 F.3d at 728.[6]

These allegations also plainly notify the Trust Defendants of the alter ego claims against them and are sufficiently particularized so as to satisfy Rule 9(b) if it applied (it does not). In *Garrett v. Cassity*, a court from this District refused to dismiss a plaintiff's alter ego allegations against a family trust after seeing "no reason why [the defendants] cannot respond to these allegations." *Garrett v. Cassity*, No. 4:09CV01252 ERW, 2010 WL 5392767, at *35 (E.D. Mo. Dec. 21, 2010). The *Garrett* court likewise noted that allegations that the corporate defendants in that case "are the alter egos of the Cassitys and of the other corporations under the RBT Trust umbrella . . . clearly present Plaintiffs' view of these entities role in the alleged fraud, and are sufficiently factual to enable them to form an intelligent response." *Id*. at *38.

Lastly, certain Defendants argue that certain allegations in the Complaint are inadequate to satisfy Rule 9(b) because they are pleaded on information and belief. Carroll Memo. at 15. But in fact, the vast majority of the allegations summarized above are pleaded as facts, with only a few discrete sentences pleaded based on information and belief. *See* Compl. ¶¶ 3, 20–27. Thus, the statement that Defendants rely on that "[a]llegations pleaded on information and belief

---

[6] Even if Missouri state law applied here, the Complaint's allegations contain sufficient particularity to meet the three-part state test. Specifically, the Complaint particularly alleges that (1) the Trusts have no real separate existence and (2) Defendants used the Trusts to violate the FTC Act and Wisconsin consumer laws, which (3) caused over $90 million in injuries to consumers. *See Meadowfresh*, 606 S.W.3d at 204.

usually do not meet Rule 9(b)'s particularity requirement," *Drobnak v. Anderson Corp.*, 561 F.3d 778, 783 (8th Cir. 2009), would only apply to a subset of the relevant Complaint allegations if Rule 9(b) applied here (again, it does not). Moreover, the *Drobnak* Court noted that "[w]hen the facts constituting the fraud are peculiarly within the opposing party's knowledge . . . , such allegations may be pleaded on information and belief." *Id.* Such is the case here, where the "information and belief" allegations concern details of non-public Trust documents that Plaintiffs do not possess and that are uniquely known by the alter ego Defendants. In such circumstances, courts have still found Rule 9(b) to be satisfied. *See Abels v. Farmers Commodities Corp*, 259 F.3d 910, 921 (8th Cir. 2001) ("Where a plaintiff is not a party to a communication, particularity in pleading may become impracticable"); *Select Comfort Corp. v. Sleep Better Store, LLC*, 796 F. Supp. 2d 981, 984–85 (D. Minn. 2011) (drawing all reasonable inferences from the factual allegations, including those pled on information and belief, court found sufficient particularity under Rule 9(b)).

## IV. The Wisconsin Allegations Are Properly Filed in Federal Court.

Defendants contend that Wisconsin's claims must be dismissed because certain language in state statutes limits the Wisconsin Department of Justice ("WIDOJ") to filing the claims in state circuit courts. *See* Carroll Memo. at 4–5; Reed Memo. at 11–12. Both sets of Defendants argue that because Wis. Stat. §§ 100.18(11)(d) and 100.20(6) provide that WIDOJ "may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation[s]" alleged in the *Complaint*, the State's legal claims *may only* be filed in such a court. This is erroneous.

First, no such limitation is expressly stated in either of these statutes. Defendants assume that "may" when used in a statute necessarily means "may only," but they cite no authority for

that general proposition, and no specific authority that has endorsed that restrictive interpretation for Wis. Stat. §§ 100.18(11)(d) and 100.20(6).

Second, Defendants take the "circuit court" phrase out of context, imbuing a restrictive meaning that is inconsistent with the statutory scheme as a whole. The language emphasized by Defendants appears in only two of the provisions enforced by Wisconsin. Wisconsin is seeking not only injunctive relief – the remedy identified in the sentence referencing "circuit court" - but also restitution, civil forfeitures (penalties), supplemental forfeitures, and cost-recovery. Only two of the statutory subsections authorizing Wisconsin to seek these remedies mention "circuit court." The other provisions in Wis. Stat. § 100.263 and Wis. Stat. § 100.264 either reference "the court" (not naming a specific venue) or do not specify any type of court at all. Of course, a legal claim seeking such remedies must *be sought* in some court. These provisions, read as a whole, show that the Wisconsin legislature is simply not in the business of putting a preemptive limitation on where Wisconsin may seek to enforce violations of these laws.

Defendants' reliance on *State v. Balistrieri*, 87 Wis. 2d 1, 274 N.W.2d 269 (Ct. App. 1978) is misplaced (*see* Carroll Memo. at 11; Reed Memo. at 5). *Balistrieri* was a criminal prosecution brought by a district attorney in a county (not circuit) court charging violations of the home improvement contractor regulations promulgated under Wis. Stat. § 100.20. *Balistrieri* challenged his conviction by, among other things, relying on the same Wis. Stat. § 100.20(6) "in circuit court" argument made by Defendants here. However, the *Balistrieri* court never even reached the issue. The Court of Appeals rejected Balistrieri's argument because "[t]his action was not brought under sec. 100.20(6), Stats. It was brought pursuant to sec. 100.26(3), Stats." The *Balistrieri* court does not support Defendants' "circuit court" argument and should not have been cited for that purpose.

Third, the overall structure of the enforcement provisions of Wis. Stat. § 100.18 shows that the "circuit court" phrase in Wis. Stat. § 100.18(11)(d) was not intended to restrict claims filed by WIDOJ to that venue. Wisconsin Stat. § 100.18(11)(a) provides that "[t]he department of agriculture, trade and consumer protection shall enforce this section. Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction. This remedy is not exclusive." Wis. Stat. § 100.18(11)(a).

This case was referred to WIDOJ by the Department of Agriculture, Trade and Consumer Protection ("DATCP"), which had investigated Defendants' business dealings in Wisconsin. WIDOJ provides "all legal services required by [DATCP] relating to the enforcement of" the statutes within its jurisdiction, including Wis. Stat. §§ 100.18 and 100.20. It would be irrational for the Wisconsin Legislature to have given DATCP express authorization to enforce Wis. Stat. § 100.18 in "any court having equity jurisdiction," but to then restrict WIDOJ (which provides all legal services required by DATCP) to filing such claims in only the state circuit courts.

Finally, Wisconsin's undersigned counsel has found no case in which a federal district court has excluded WIDOJ from filing claims under Wis. Stat. §§ 100.18 or 100.20 in federal district courts pursuant to the language cited by Defendants. Indeed, WIDOJ has filed claims in federal courts on behalf of Wisconsin under statutes that include the "in circuit court" language relied upon by Defendants here. *See FTC v. Syngenta*, No. 22-828 (M.D.N.C.), Dkt. 1, ¶ 242; *FTC v. Frontier Commc'n*, *et al.*, No. 21-4155 (C.D. Cal.), Dkt. 1, ¶ 9; *State of Alabama, et al. v. Nationstar Mortgage*, 20-3551 (D.D.C.), Dkt. 1, ¶¶ 7, 21.[7] In none of those cases have

---

[7] Given the large number of plaintiff states, the Complaint in *Nationstar Mortgage* alleged "unfair or deceptive acts or practices in violation of the consumer protection laws of each Plaintiff State" without citing specific statutory provisions.

defendants moved to dismiss on the "in circuit court" grounds asserted by Defendants in this case.

## V. The Court Should Exercise Supplemental Jurisdiction over the Wisconsin Claims.

Defendants mistakenly assert that supplemental jurisdiction is discretionary. Reed Memo. at 12 (stating "[t]he Court's exercise of its power to decline supplemental jurisdiction is discretionary," and citing a case involving a statutory exception); Carroll Memo. at 6 (same). In fact, "[o]nce original jurisdiction exists, supplemental jurisdiction over all related claims is mandatory . . .," and the Court may decline to exercise supplemental jurisdiction only if a statutory exception applies. *ABF Freight Sys. Inc. v. Intern'l Bro. of Teamsters*, 645 F.3d 954, 963–64 (8th Cir. 2011), *following* 28 U.S.C. §§ 1367(a) and (c). The statute provides four exceptions, in which the court "*may* decline to exercise supplemental jurisdiction:" (1) "a novel or complex issue of state law;" (2) state law claims that "substantially predominate[]" over the claims of original jurisdiction; (3) dismissal of all claims of original jurisdiction; and (4) "exceptional circumstances" with "other compelling reasons to decline." 28 U.S.C. § 1367 (c) (emphasis added). None of those exceptions apply here: (1) the complaint alleges clear and straightforward violations of established state law; (2) the state law claims do not predominate over the United States' allegations of federal law violations; (3) all of the United States' claims should survive dismissal; and (4) there are no exceptional circumstances or other compelling reasons to decline jurisdiction. *Compare 28* U.S.C. § 1367(c)(1)-(4) (providing four exceptions).

Moreover, even if a statutory exception applied, it would not automatically preclude supplemental jurisdiction, as Defendants assume. *See* Reed Memo. at 12–13; Carroll Memo. at 5–7 (making this assumption). Instead, the court would consider whether supplemental jurisdiction serves the interests of judicial economy, convenience, fairness, and comity. *See Garrison v. New Fashion Pork LLP*, No. 18-CV-3073-CJW-MAR, 2020 WL 1811373, at *11–

*12 (N.D. Iowa, Jan. 9, 2020) *following Wilson v. Miller*, 821 F.3d 963, 970–971 (8th Cir. 2016). When it avoids multiple proceedings, "judicial economy and convenience weigh heavily in favor of exercising supplemental jurisdiction." *Id.* Here, supplemental jurisdiction avoids a separate proceeding in Wisconsin, and thus, the Court would have good reason to exercise supplemental jurisdiction, even if it was not mandatory.

**CONCLUSION**

For all of the above reasons, the Court should deny all three motions to dismiss. Alternatively, even if the Court found a pleading deficiency, the Court should grant the United States and Wisconsin leave to file an amended complaint to correct any defect.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

AMANDA N. LISKAMM
Director
LISA K. HSIAO
Assistant Director
Consumer Protection Branch

s/ Amy P. Kaplan
AMY P. KAPLAN (Bar # 1010279DC)
SARAH WILLIAMS (Bar # 1006622DC)
Trial Attorneys
P.O. Box 386
Washington, DC 20044
Phone: (202) 598-8153
Amy.P.Kaplan@usdoj.gov
Sarah.Williams@usdoj.gov

SAYLER A. FLEMING
United States Attorney
Eastern District of Missouri

s/ Suzanne J. Moore________
SUZANNE J. MOORE (Bar # 45321)
Assistant United States Attorney
United States Attorney's Office
Eastern District of Missouri
Thomas F. Eagleton Courthouse
111 South 10th Street, Suite 3.300
St. Louis, MO 63102
Phone: (314) 539-2547
smoore2@usa.doj.gov

Attorneys for Plaintiff
THE UNITED STATES OF AMERICA

JOSHUA L. KAUL
Attorney General, State of Wisconsin

s/ Lewis W. Beilin_________
Lewis W. Beilin (Bar #1038835WI)
Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-3076
Email: beilinlw@doj.state.wi.us

Attorney for Plaintiff
STATE OF WISCONSIN

Of Counsel:

SAMANTHA DENNY
WILLIAM J. HODOR
Federal Trade Commission
230 South Dearborn Street, Suite 3030
Chicago, Illinois 60604
(312) 960-5623 (Denny)
(312) 960-5592 (Hodor)
sdenny@ftc.gov
whodor@ftc.gov