IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and<br><br>STATE OF WISCONSIN,<br><br>Plaintiffs,<br>v.<br><br>GEORGE REED, LOUANN REED, and THE MAGGIE AND LUCY IRREVOCABLE TRUST DATED SEPTEMBER 11, 2019<br><br>Defendants. | ) | Case No. 4:22-cv-01243-JMB |

**REED DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

COME NOW Defendants George Reed, LouAnn Reed, and the Maggie and Lucy Irrevocable Trust dated September 11, 2019 (the "Reed Defendants"), by and through undersigned counsel, and file the following reply in support of their joint motion to dismiss Plaintiffs' Complaint in this matter:

## I. Preliminary Statement

Plaintiffs' Response to the Reed Defendant's Motion to Dismiss engages in an extended substantive discussion of whether, and in what circumstances, the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply. The Reed Defendants have pointed to substantial authority in their motion and offer additional Eighth Circuit authority in this Reply, applied by district courts in Missouri, that indicates that this heightened standard applies to the claims of statutory fraud made in the Complaint.

Ultimately, however, the Reeds' arguments here do not rest on the resolution of that dispute, but on whether the conclusory allegations made by Plaintiffs, lacking

specificity with respect to individual defendants, state a claim under Rule 8's pleading standards. Plaintiffs' conclusory allegations of statutory fraud, unfair practices, *and alter ego* are clearly insufficient to meet Rule 8's standards, much less the heightened standards of Rule 9(b).

## II. Application of Eighth Circuit Authority Clearly Indicates that Rule 9(b)'s Particularity Requirements Apply Here

The Eighth Circuit has held that claims "grounded in fraud" must meet the heightened pleading requirement of Rule 9(b). *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1010 (8th Cir. 2015). In *Streambend*, the Eighth Circuit considered authority from other circuits in the context of securities laws, including a Second Circuit approach that "the heightened pleading standard of Rule 9(b) applies to Section 11 and Section 12(a)(2) claims insofar as the claims are premised on allegations of fraud," and a "comparable" Third Circuit test that held that "Section 11 and Section 12(a)(2) "claims do not sound in fraud if ordinary negligence is expressly pled in connection with those claims" and that "[i]n such a case, the fraud allegations [in a separately pleaded Rule 10b–5 claim] cannot be said to 'contaminate' the Section 11 and 12(a)(2) claims if the allegations are pled separately." *Id*. at 1012. Ultimately, in *Streambend*, the Eighth Circuit recognized that "[t]his is not a case involving securities laws claims in which *NationsMart* would be controlling," but concluded that these cases provide a sound approach for applying Rule 9(b) to claims under § 1703(a)(2) of the Interstate Land Sales Act. In *Streambend*, applying the same approach, the Eighth Circuit held that "the sufficiency of this claim is governed by the notice pleading standards of Rule 8(a)" only with respect to claims that are not **explicitly** grounded in fraud, where "the claim is pleaded separately from any (a)(2)(A) or (C) fraud claims," and "if there are

no specific averments of fraud, **only allegations of innocent or negligent misrepresentations and omissions**." *Id.* at 1013 (emphasis added). "A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018) (while "[i]t is true that § 49-22-16.1 penalizes obtaining easements through "harassment," "threat," "intimidation," and other "unfair tactics," as well as through "misrepresentation," "deception," and "fraud," "that does not clarify whether plaintiffs' claim is grounded in fraud such that Rule 9(b) applies.") In *Olin*, the Eighth Circuit rejected an inquiry that based solely on the statue in question, but, quoting *Streambend,* applied "'a pleading-specific inquiry' in which the focus is on 'the elements of the claims asserted.'" *Id.*

Here, Plaintiffs' claims do not only allege innocent or negligent misrepresentations but fundamentally allege a "fraudulent timeshare exit scheme" and substantially turn on allegations of "false," "deceptive" and/or "misleading" representations and sales tactics, "fraudulent misrepresentation" and "misrepresentation," and "failing to disclose… the true nature" of Defendants' activities. Complaint (Doc. 1) at ¶¶ 1, 19, 24, 30, 43, 44, 48, 50, 53, 73, 75, 80(e), 82, 85, 93, 97. The Complaint does not only, separately, expressly plead allegations of innocent or negligent misrepresentations and omissions, but pleads fraudulent conduct in connection with those claims, that is part and parcel of and "contaminates" those claims. *See, e.g, Moore v. Compass Group USA, Inc.*, 4:18-CV-01962-SEP, 2022 WL 4598558, at *8 (E.D. Mo. Sept. 30, 2022) ("Here, Plaintiffs' claims are grounded in fraud, as they are all based on the primary allegation that Defendant's labeling practices are "misleading," and "deceptive," and that they constitute "fraud," "false pretense," a "false promise," and

"misrepresentation"). *See Olin*, 910 F.3d at 1076 ("Plaintiffs' additional characterization of [Defendant's] statements as 'misrepresentations' or 'deception' does not help them").

As Judge Pitlyk recognized in *Moore*, "[a]lthough many of Plaintiffs' claims are brought under various state consumer protection statutes, rather than common law actions for fraud, federal courts routinely apply Rule 9(b) to such statutory claims." *Moore v. Compass Group USA, Inc.*, 4:18-CV-01962-SEP, 2022 WL 4598558, at *8 (E.D. Mo. Sept. 30, 2022). *See also, e.g., Goldman*, 501 F. Supp. 3d at 666 ("The Eastern and Western Districts of Missouri have consistently held that Rule 9(b) applies to MMPA cases."); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (analyzing ICFA claim under Rule 9(b)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) to CLRA and UCL claims based on "unfair or deceptive acts"); *Pierce v. N. Dallas Honey Co.*, 2020 WL 1047903, at *4 (N.D. Tex. Mar. 3, 2020) (applying Rule 9(b) to a Texas DTPA claim based on alleged misrepresentations and fraudulent concealment). Here, Plaintiffs have chosen to plead theories of liability, and specific conduct, that sounds in fraud and must plead those claims consistent with Rule 9(b)'s particularity requirements.

## III. Whether or Not Rule 9(b) Applies, the Complaint Substantially Rests on Conclusory Allegations, Which Are Properly Disregarded in Ruling on a Motion to Dismiss

"Rule 8 does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Under Rule 8's standard, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Servs. of Am. v. Am. State Bank*, 339 F.3d 764, 767 (8th Cir.2003). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*. 550 U.S. at 555. The Eighth Circuit has made clear that, "[e]ven "[w]hen the particularity requirement of Rule 9(b) does not apply to a misrepresentation or omission claim… the Rule 8(a)(2) standard—'a short and plain statement of the claim showing that the pleader is entitled to relief'—requires some attempt to show, 'What is the representation? ... Why is each representation false? Where was each representation made? Who made each representation? When was each representation made?'" *Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1014 (8th Cir. 2015), quoting *In re Buffets, Inc. Sec. Litig.*, 906 F.Supp. 1293, 1298 (D. Minn. 1995).

Here, with respect to the Reed Defendants as individuals, the Complaint offers only formulaic recitations and legal conclusions. Plaintiffs' Opposition rests substantially on precisely the same conclusory paragraphs identified by the Reeds in their Motion to Dismiss by necessity—the Complaint has nothing further to offer with respect to the Reed Defendants. *See* Opposition (Doc. 60) at 10. The Opposition refers to Paragraphs 25-29 of the Complaint and claims, inaccurately that these paragraphs "detail[] each Individual Defendant's role in the timeshare exit scheme," when, in fact, these paragraphs only allege corporate positions, and, in the alternative and in purely

conclusory fashion, several possible theories of potential liability pulled from a formulaic recitation of the elements of a cause of action.

The Plaintiffs' attempt to rely on position in a company as a proxy for factual allegations of personal involvement in an alleged scheme misses the point entirely. Whether one may ultimately be able to factually establish knowledge circumstantially before a trier of fact based, in part, on matters like a position in a company (as the cases cited by Plaintiffs suggest may be permissible), is a different question than that raised by the Reed Defendants' Motion to Dismiss—whether a plaintiff has to allege, with some factual detail, actual participation (or knowledge of the scheme coupled with authority to control) in an unlawful scheme. In fact, a plaintiff has to actually allege knowledge and control with a sufficient factual basis, not just allege a position in a company and a purported scheme by the company. Plaintiffs have to factually connect those dots to sufficiently "'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678. In *Nestle Purina PetCare Co. v. Blue Buffalo Co. Ltd.*, 4:14 CV 859 RWS, 2015 WL 1782661, at *9 (E.D. Mo. Apr. 20, 2015), which Plaintiffs cite in their opposition, the Eastern District of Missouri opinion did not excuse "group pleading" as a universal concept, but simply found that "[w]hile there are some circumstances where grouping defendants together in a complaint would deprive the defendants of fair notice of the nature of the claims against it, such is not the case here." *Id.*[1] In that case, the operative

[1] Similar group pleading allegations, of course, do not satisfy Rule 9(b)'s heightened pleading standards. *See Streambend*, 781 F.3d at 1013 ("The SAC attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion. The district court correctly concluded that such vague allegations do not satisfy Rule 9(b)"). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987).

pleading "provide[d] the Advertising Defendants with sufficient notice of the acts they are alleged to have done, namely, creating and designing the Honesty website (PRCG/Haggerty) as well as the Twitter, facebook, and Google ads (Blue State Digital)." Plaintiffs cite a Nevada District Court case to argue that the practice of generic allegation is acceptable. However, that Court noted that "[t]he thirty-page complaint (doc. # 1) goes to great lengths to categorize defendants based on their function in the alleged scheme." *Fed. Trade Comm'n v. Ivy Cap., Inc.,* 2011 WL 2118626, at *4 (D. Nev. May 25, 2011). That level of individual detail is absent from the Complaint here. The Complaint offers no allegation that can be fairly read to allege that the Reed Defendants themselves made any of the statements or participated in the actions at issue. The Complaint fails to meet Rule 8's pleading standard, as well as the heightened pleading standard of Rule 9(b).

### *IV.* Whether or Not Missouri Law or Federal Law Controls the Elements of *Alter Ego*, Plaintiffs Have Failed to Properly Plead *Alter Ego*

Generally, in a case brought in federal court, "[s]tate law is viewed to determine whether and how to pierce the corporate veil." *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 649 (8th Cir. 2003) (considering personal jurisdiction). Plaintiffs cite a Tennessee district court case that reflected uncertainty as to when federal common law applies to the determination of questions of alter ego ("it **appears** that federal common law determines the parameters of the alter ego doctrine where the underlying cause of action is based on a federal question"). *United States v. Carell*, 681 F. Supp. 2d 874, 890 (M.D. Tenn. 2009) (emphasis added). As the Eighth Circuit has observed, "the Supreme Court has noted that there is 'significant disagreement among courts and commentators'

regarding whether federal courts should 'apply a federal common law' or 'borrow state law' when piercing the corporate veil to attach shareholder liability for a corporation's violation of a federal law.'" *N.L.R.B. v. Bolivar-Tees, Inc.*, 551 F.3d 722, 728 (8th Cir. 2008), citing *United States v. Bestfoods*, 524 U.S. 51, 61–64 (1998). *See also Twin City Carpenters Pension Master Tr. Fund v. Phantom Const. Services, LLC*, CIV. 13-857 RHK/TNL, 2014 WL 2213179, at *4 (D. Minn. May 28, 2014) "It is unclear whether state or federal law governs veil-piercing in a federal-question case"), *comparing, e.g., Pillar Capital Holdings, LLC v. Williams (In re Living Hope Sw. Med. Servs., LLC)*, 509 F. App'x 578, 584 (8th Cir. 2013) (per curiam ) (utilizing state law for veil piercing in bankruptcy action); and *Carpenters & Joiners Welfare Fund v. Wayne*, Civ. No. 02–779, 2003 WL 21730105, at *3 (D.Minn. July 21, 2003) (Ericksen, J.) (applying state veil-piercing law in ERISA action), with, *e.g., Minn. Laborers Health & Welfare Fund v. Scanlan*, 360 F.3d 925, 928 (8th Cir.2004) (applying federal common law to pierce veil in ERISA case). In *Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1055–56 (D. Minn. 2021), a case cited by the Plaintiffs in their Response, the district court recognized this lack of clarity and considered the reasoning in another case, *Bhd. of Locomotive Eng'rs v. Springfield Terminal Ry. Co.*, 210 F.3d 18, 26–27 (1st Cir. 2000), in determining to apply federal law on veil piercing in a federal labor law case applying the Worker Adjustment and Retraining Notification (WARN) Act. The court in *LME* noted:

> In *Springfield*, the First Circuit stated that when "the federal statute in question demands national uniformity, federal common law provides the determinative rules of decision," as is the case with labor law statutes, especially because a company might be engaged in commerce across several states. Additionally, the Springfield court concluded that the rule in federal cases may necessitate giving less respect "to the corporate form than does the strict common law alter ego doctrine" to prevent frustration

> of a federal statute's purpose and to prevent an alter ego from being employed to evade federal obligations.

*LME, Inc.*, 537 F. Supp. 3d at 1055–56. *See also Bruhn's Freezer Meats of Chi., Inc. v. U.S. Dep't of Agric.*, 438 F.2d 1332, 1343 (8th Cir. 1971) ("The law is well settled that the corporate entity may be disregarded when the failure to do so would enable the corporate device to be used to circumvent a statute." (quotation omitted)).

In the labor law context in *LME*, the Court applied federal common law instead of Minnesota law, noting that "the Eighth Circuit has employed federal common law in similar federal question cases," and that, "like the Railway Labor Act in Springfield, the WARN Act serves to regulate labor issues; often applies to corporate entities with facilities and employees spread across several states; and federal common law would better serve to prevent alter egos from frustrating its purpose and evading its obligations." *LME, Inc*., 537 F. Supp. 3d at 1055–56. To further complicate this analysis, "[a]lthough the term 'alter ego' is commonly employed in the context with piercing of the corporate veil, a distinct 'alter ego doctrine' has developed under the NLRA, which 'involves a more lenient standard for disregarding the corporate form than that employed in corporate law.'" *Bolivar-Tees, Inc*., 551 F.3d at 728, quoting *Greater Kan. City Laborers Pension Fund v. Super. Gen. Contractors, Inc*., 104 F.3d 1050, 1055 (8th Cir.1997) (internal quotations and citations omitted).

Here, this dispute does not involve federal labor laws or a statutory scheme with stringent nationwide requirements capable of being avoided by operation across multiple states, it involves a consumer protection statute in an environment where the states (including the States of Wisconsin and Missouri) and the federal government each offer

broad protections to consumers. This case does not fit within the framework in which application of federal veil-piercing law is appropriate or necessary to prevent evasion.

In any event, however, the distinction has no meaningful significance with respect to the Reed Defendants' Motion to Dismiss, because the Complaint's allegations are entirely conclusory and fail to plead sufficient factual matters to state a claim of *alter ego* under either standard. The "federal common law standard," for *alter ego* considers:

> (i) was there such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (ii) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations.

*Bolivar-Tees, Inc*., 551 F.3d at 728, quoting *Scanlan*, 360 F.3d at 928. "When assessing the first prong to determine whether the shareholders and the corporation have failed to maintain their separate identities," courts consider "the degree to which the corporate legal formalities have been maintained, and ... the degree to which individual and corporate assets and affairs have been commingled." *Bolivar-Tees, Inc*., 551 F.3d at 728, quoting *Super. Gen. Contractors, Inc.*, 104 F.3d at 1055. "A non-exhaustive list of factors [courts] consider" in making this determination include:

> (1) whether the corporation is operated as a separate entity; (2) the commingling of funds and other assets; (3) the failure to maintain adequate corporate records; (4) the nature of the corporation's ownership and control; (5) the availability and use of corporate assets, the absence of same, or under capitalization; (6) the use of the corporate form as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of corporate legal formalities and the failure to maintain an arm's-length relationship among related entities; (8) diversion of the corporate funds or assets to noncorporate purposes; and ... (9) transfer or disposal of corporate assets without fair consideration.

*Bolivar-Tees, Inc*., 551 F.3d at 728, quoting *White Oak Coal Co.*, 318 N.L.R.B. 732, 734 (1995). "No one factor is determinative, and not all of these factors must be present."

*Bolivar-Tees, Inc.*, 551 F.3d at 728–29.

Under the federal analysis, "[w]hen assessing the second prong to determine whether adherence to the corporate fiction would sanction a fraud, promote injustice or lead to an evasion of legal obligations, we consider causation and culpability." *Id*. at 729. "A corporation's inability to pay its debt alone is not sufficient to support a finding of injustice." *Id*. "It is only when the shareholders disregard the separateness of the corporate identity *and when that act of disregard causes the injustice or inequity or constitutes the fraud* that the corporate veil may be pierced." *Greater Kan. City Roofing*, 2 F.3d at 1053 (emphasis in original). "Additionally, the shareholders who will be held personally liable for the corporation's debt must share in some level of culpability for the injustice." *Bolivar-Tees, Inc*., 551 F.3d at 729.

To whatever extent federal law controls the pleading of *alter ego*, that does not release Plaintiffs from the requirement to plead the basis of their claims with particularity. "Rule 9(b) does not apply to piercing allegations **except to the extent that fraud is alleged as an element**." *Burke v. Citigroup, Inc*., 4:06CV3194, 2006 WL 3483787, at *3–4 (D. Neb. Nov. 29, 2006), citing *Schwan v. CNH America LLC*, 2006 WL1215395 (D. Ne. 2006). "Where fraud is not the basis of the claim, a plaintiff seeking to pierce the corporate veil must allege that the subsidiary was so dominated by the parent corporation, at least with respect to the transactions at issue, that it had no separate will of its own and that it was a mere instrumentality of its parent." *Id*. citing *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc*. 771 F.Supp. 600, 608 (S.D.N.Y.1991). *See also Mehta v. Angell Energy, LLC*, 19-CV-2631 (MJD/DTS), 2020

WL 1893208, at *10 (D. Minn. Apr. 1, 2020) (Rule 9(b) applies "where fraud is an element of the veil-piercing claim).

Here, the allegations of the Complaint raise fraud as an element, and fail to address, with facts rather than legal conclusions so as to satisfy even the general pleading requirements of Rule 8, a basis for disregarding each of what in reality are multiple different requests to disregard the corporate form. Plaintiffs' pleading seeks to avoid the legal distinctions: 1) between several "Subsidiary Defendants"; 2) between "Subsidiary Defendants" and Mainline, 3) between Mainline and the Trusts, and 4) between the Maggie and Lucy Irrevocable Trust dated September 11, 2019 and the Reeds. The respective elements of "unity of interest and lack of respect" or "complete domination" under federal or Missouri law are particularly problematic with each of these requests, most markedly with respect to the Reed Defendants with the request to disregard the corporate form between Mainline and the Trusts. The Complaint leaves clear that such domination and unity of interest with respect to Mainline is not factually alleged—the Complaint clearly alleges two separate factions of control—the Maggie and Lucy Irrevocable Trust, benefitting members of the Reed family, and the Jake And Avery Irrevocable Trust Dated September 11, 2019, benefiting members of the Carroll family, that are fundamentally inconsistent with those concepts of unanimous control. *See, e.g., Bank of Montreal v. Avalon Capital Group, Inc.*, 743 F. Supp. 2d 1021, 1032 (D. Minn. 2010) ("The Amended Complaint fails to allege how, if Avalon had complete control over Lakeland, Bassett and Machacek were manipulating Lakeland for their own benefit….Based on the facts pled in the Amended Complaint, it is not plausible that either man had the ability to exploit Lakeland as his alter ego. Their lack of control over

Lakeland, combined with a failure to plead any of the other factors relevant to piercing the corporate veil… demonstrates that there is no viable claim”).

Absolutely no attempt is made in the Complaint to make any factual connection to the second element of the federal test (which roughly corresponds with the second and third elements of the Missouri *alter ego* test) to establish causation of injury or injustice **because of** disregard of the corporate form. *See Greater Kan. City Roofing*, 2 F.3d at 1053. The conclusory allegations of the Complaint fail to state a claim under the general pleading rules of Rule 8, and entirely fail to meet the heightened standards of Rule 9(b).

**V. The Wisconsin Claims Cannot Be Filed by the Wisconsin Department of Justice in a Federal District Court.**

The Plaintiffs' argument that "may," as addressed in two different Wisconsin statutes relied upon by the State of Wisconsin here, is a permissive term, ignores the central point of the Reed Defendants' argument, which raises a question of the limitations of a grant of authority. The Wisconsin legislature has set forth authority for what actions may be taken by its Department of Justice, and when. *See, e.g.*, Wis. Stat. § 165.25 (West). *See also Nowicki v. Ullsvik*, 69 F.3d 1320, 1326 (7th Cir. 1995) ("The Wisconsin legislature has authorized the Attorney General under some circumstances to defend a state employee in civil litigation surrounding any act growing out of the state employee's lawful duties.") The action taken here is one that the legislature has authorized the Department of Justice to prosecute only in a circuit court, and only under certain circumstances. *See* Wis. Stat. Ann. § 100.18(11)(d) (West) ("The department [department of agriculture, trade and consumer protection] or the department of justice, after consulting with the department, or any district attorney, upon informing the department, may commence an action in circuit court in the name of the state to restrain by temporary

or permanent injunction any violation of this section"). An earlier subsection of the same statute makes clear that the legislature recognized a broader authority for the Department of Agriculture, Trade and Consumer Protection to bring an equity claim. *See* Wis. Stat. § 100.18 (11)(a) ("The department of agriculture, trade and consumer protection shall enforce this section. Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction."). That other statutes in the same chapter providing for additional remedies simply reference "the court," as Plaintiffs argue (*See* Response at 33), does not mean that the authorization is broader than it is, it simply reflects that where the suit (which the later sections assume has already been filed) is pending has already been dictated by a prior authorizing statute. (In addition, that broadness also duly reflects that the Wisconsin Department of Agriculture, Trade and Consumer Protection, unlike the Wisconsin Department of Justice, is authorized to bring an action not only in a circuit court but in other courts having proper equity jurisdiction).[2]

Moreover, even if the Reed Defendants' argument were one of statutory interpretation between permissive and mandatory application, and it is not, the relevant case law indicates that the statutes' use of "may," in this context, is mandatory. *See e.g. Moseley v. Sunshine Biscuits*, 107 F. Supp. 164, 165 (W.D. Mo. 1952) ("[I]n all venue cases the word 'may' is uniformly construed as meaning 'must' or 'shall.' "); *Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 152, 96 S. Ct. 1989, 1992, 48 L. Ed. 2d 540 (1976) (" Section 94 provides that suits against a national banking association "may

---

[2] All of Plaintiffs' Wisconsin claims are brought under the authority of either Wis. Stat. § 100.18(11)(d) or Wis. Stat. § 100.20(6) (which authorizes the bringing of actions in circuit court for violations of regulations promulgated under the same section).

be had" in the federal district court for the district where such association is established. The Court has held that this grant of venue is mandatory and exclusive: The phrase 'suits . . . may be had' was, in every respect, appropriate language for the purpose of specifying the precise courts in which Congress consented to have national banks subject to suit and we believe Congress intended that in those courts alone could a national bank be sued against its will."); *Wells Fargo Bank, N.A. v. Caballero*, 2020 WL 907544, at *4 (D.S.D. Feb. 25, 2020) ("This court agrees with the Third Circuit Court of Appeals and the majority of the district courts" that "may" means "must" or "shall").

## VI. Conclusion

For the foregoing reasons and those stated in their Motion to Dismiss,[3] Defendants George Reed, LouAnn Reed, and the Maggie and Lucy Irrevocable Trust dated September 11, 2019, respectfully move to dismiss Counts I, II, III, IV, V, VI, and VII of Plaintiffs' Complaint for failure to state a claim.

[3] Plaintiffs' Response engages in a discussion about the Reed Defendants' use of the word "discretionary" to describe a court's ability to decline to exercise supplemental jurisdiction where a statutory exception applies. The authority cited in the Motion to Dismiss indeed describes that discretion using the same language. *See, e.g,, Innovative Home Health Care, Inc. v. P.T.–O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1287–88 (8th Cir.1998). Plaintiffs are correct, however, that such discretion exists only where a statutory exception applies, as it does here, where the Wisconsin counts raise novel and complex issues of state law, and the breadth and application of a number of Wisconsin regulatory statutes, regulations and remedies, that will substantially predominate over the FTC claims.

Dated: March 20, 2023

Respectfully submitted,

ROSENBLUM, SCHWARTZ & FRY, P.C.

By: */s/ N. Scott Rosenblum*

N. SCOTT ROSENBLUM #33390
Attorney for Respondent
120 South Central Avenue, Suite 130
Clayton, Missouri 63105
(314) 862-4332/Facsimile 862-8050
srosenblum@rsflawfirm.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of March, 2023, the foregoing was filed via the Court's CM/ECF System and will be thereby served upon counsel of record for all parties in this matter.

*/s/ N. Scott Rosenblum*