UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, and<br>STATE OF WISCONSIN,<br><br>Plaintiffs,<br><br>vs.<br><br>CONSUMER LAW PROTECTION, LLC,<br>et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 4:22 CV 1243 JMB<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants George Reed, LouAnn Reed, and the Maggie and Lucy Irrevocable Trust ("Reed Defendants") Motion to Dismiss (Doc. 50), Defendants Christopher Carroll, Eduardo Balderas, Premier Reservations Group, LLC, Resort Transfer Group, LLC, Square One Development Group, Inc., Square One Group, LLC, Timeshare Help Source, Consumer Law Protections, LLC, Consumer Rights Council, Farmington Allegiance, LLC, Mainline Partners, LLC, and the Jake and Avery Irrevocable Trust ("Carroll Defendants") Motion to Dismiss (Doc. 54), and Defendant Scott Jackson's Motion to Dismiss (Doc. 56).  The Government filed a single response (Doc. 60) to which the Reed Defendants (Doc. 67) and Carroll Defendants (Doc. 66) replied.  For the reasons set forth below, the Motions are **DENIED**.

**I.      Background**

In a November 21, 2022 Complaint (Doc. 1), the United States of America and State of Wisconsin (collectively, government or Plaintiffs) allege claims related to Defendants' purported scheme to fraudulently sell "bogus timeshare exit services" to consumers throughout the United

States via direct mail and in person campaigns. The government alleges that each of Defendants are interrelated individuals, trusts, corporations, and sham companies that are part of a common enterprise engaged in bilking consumers out of more than $90 million. The government alleges that Defendants' representatives use high pressure tactics and false statements to induce individuals to pay them between $5,000 to over $80,000 in service fees for a release of their timeshare obligations. Defendants then allegedly do not take any meaningful steps towards fulfilling their end of the bargain within the specified time and further deny consumers refunds when they complain.

The government alleges that Defendants' actions are in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (Counts I and II) ("FTC Act"), the Cooling-Off Rule, 16 C.F.R. § 429.1 (Count III), Wisconsin's Administrative Code for the Department of Agriculture, Trade and Consumer Protection ("ATCP"), WIS. ADMIN. CODE ATCP §§ 127.44, 127.46,127.72, 127.74 (Counts IV, V, and VI; "§127 claims"), and Wisconsin's Fraudulent Representations Law, WIS. STAT. § 100.18 (Count VII; "§100.18 claim"). In their motions, Defendants generally argue that the government fails to state a claim, has not alleged fraud with particularity, has not alleged the individual liability of each Defendant, that the state law claims cannot be filed in federal court, and that the Court should decline to exercise supplemental jurisdiction over those claims.[1]

**II.   Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to

---

[1] In the three motions to dismiss, Defendants make similar, if not identical, arguments. For ease, they will be referred to collectively.

Case: 4:22-cv-01243-JMB   Doc. #:  68   Filed: 09/22/23   Page: 3 of 14 PageID #: 239

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

In addition, Federal Rule of Civil Procedure 9(b) requires claims of fraud to be pled with particularity.  This means a plaintiff must "specify the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent act." Streambend Props. II, LLC. v. Ivy Tower Mpls., LLC, 781 F.3d 1003, 1013 (8th Cir. 2015).  These details include the "who, what, when, where and how surrounding the alleged fraud . . . and what was obtained as a result." Quintero Cmty. Ass'n., Inc. v. F.D.I.C., 792 F.3d 1002, 1008 (8th Cir. 2015).  To determine whether a claim sounds in fraud and requires particular pleading, the Eighth Circuit follows a "a pleading-specific inquiry," which looks to both "the elements of the claims asserted" and, where there is no explicit fraud element in the claim asserted, the specific allegations forming the cause of action. Streambend Properties II, LLC, 781 F.3d at 1012-1013.  Under this inquiry, "[a] claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." Olin v. Dakota Access, LLC, 910 F.3d 1072, 1075 (8th Cir. 2018).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.

Page 3 of 14

Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. Rule 8(a)(2). However, the principle that a court must accept as true all the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

**III.   Discussion**

The Federal Trade Commission Act (FTC Act) declares unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1); See Arthur Murray Studio of Washington, Inc. v. F.T.C., 458 F.2d 622 (5th Cir. 1972) (finding it an unfair practice to use high pressure tactics, "cajolery," and coercion to "induce unwary members of the public" to enter into exorbitantly priced dance contracts). The FTC Act empowers the Federal Trade Commission or United States Department of Justice to "prevent persons, partnerships, or corporations" from using unfair or deceptive trade practices through, in part, commencing a civil action. 15 U.S.C. §§ 45(a)(2); 56(a); See generally AMG Cap. Mgmt., LLC v. Federal Trade Commission, __ U.S. __, 141 S.Ct. 1341, 1345-1346 (2021). Regulations provide that it is, in part, an "unfair or deceptive act or practice" for a seller to fail to provide a buyer with a receipt or copy of a contract informing the buyer of the right to cancel the transaction within three business days. 16 C.F.R. § 429.1(a) (so called cooling-off period).

Wisconsin's Deceptive Trade Practices Act further provides that "no person . . . with intent to sell . . . any . . . service . . . shall . . . publish . . . an advertisement . . . [that] contains . . . any assertion, representation or statement of fact which is untrue, deceptive or misleading." WIS. STAT. § 100.18; See generally Weaver v. Champion Petfoods USA, Inc., 3 F.4th 927, 934-935 (7th Cir. 2021). Section 100.18 claims are enforced by the Wisconsin ATCP and may be filed "in any court having equity jurisdiction." Wis. Stat. § 100.18(11)(a). In addition, Wisconsin's

ATCP or Department of Justice "may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction" a violation of the statute. Id. §100.18(11)(d). The Wisconsin's Administrative Code further provides for certain disclosures, prohibits certain harassing or intimidating sales tactics, and mandates disclosure of a right to cancel, in certain door-to-door, mail, or other transactions. Wis. Admin. Code ATCP § 127.

Defendants argue that the federal fraud claims are not pled with the particularity required by Rule 9(b), and/or that they fail to state a claim. They next argue that the Complaint fails to allege or establish personal liability of the individual Defendants and that the Complaint's theories of alter ego liability must fail, among other arguments.

As to the state law claims, Defendants further argue (in addition to the foregoing arguments related to the federal claims) that this Court is the wrong forum and should decline to exercise supplemental jurisdiction over the claims.

A.   **Sufficiency of Pleading**

In order to prevail on their FTC Act claims, Plaintiffs must prove that there was a material representation likely to mislead a reasonable consumer. Federal Trade Commission v. On Point Capital Partners, LLC, 17 F.4th 1066, 1079 (11th Cir. 2021); F.T.C. v. E.M.A. Nationwide, Inc., 767 F.3d 622, 630-631 (6th Cir. 2014). Once Plaintiffs establish corporate liability, they can show individual liability by demonstrating that "the individual defendants participated directly in the practices or acts or had authority to control them" by, for example, active involvement in the business, making policy, or acting as a corporate officer. See F.T.C. v. Amy Travel Service, Inc., 875 F.2d 564, 573 (7th Cir. 1989), overruled on other grounds by Federal Trade Commission v. Credit Bureau Center, LLC, 937 F.3d 764, 767 (7th Cir. 2019); Federal Trade Commission v. Moses, 913 F.3d 297, 306-307 (2nd Cir. 2019). Unlike a typical

fraud case, the government is not required to show "subjective reliance" because FTC Act cases are "not a private fraud action, but [rather] an action brought to deter unfair and deceptive trade practices . . . ."  F.T.C. v. Security Rare Coin & Bullion Corp., 931 F.2d 1312, 1316 (8th Cir. 1991); F.T.C. v. Freecom Communications, Inc., 401 F.3d 1192, 1203 (10th Cir. 2005) ("Neither proof of consumer reliance nor consumer injury is necessary to establish a § 5 violation."); See also Curtis Lumber Co, Inc. v. Louisiana Pacific Corp., 618 F.3d 762, 780 (8th Cir. 2010) (noting that Arkansas' Deceptive Trade Practices Act "protect[s] consumers from trade practices beyond common law fraud").  Thus, while the Eighth Circuit Court of Appeals has not directly spoken on the issue, the heightened pleading requirements of Rule 9 do not appear to apply to such claims, a conclusion that has been reached by a number of district courts.  See, e.g., Federal Trade Commission v. RagingBull.com, LLC, 2023 WL 2527204, * 5 (D. Md. 2023); Federal Trade Commission v. Next-Gen, Inc., 2018 WL 5310414, * 4-5 (W.D. Mo. 2018); Alpharma, Inc. v. PennField Oil Co., 2008 WL 2331019, *2 (D. Neb. 2008); see also Freecom Communications, 401 F.3d at 1203 n7 ("A § 5 claim simply is not a claim of fraud as that term is commonly understood or as contemplated by Rule 9(b) . . . .").

Defendants nonetheless cite to a number of other district court cases, mostly in the Ninth Circuit, that find that FTC Act claims must be plead with particularity, and district court cases in this Circuit construing state deceptive practices law, for the proposition that FTC Act claims must be plead with particularity.  See, e.g., Johnson v. Gilead Sciences, Inc., 563 F.Supp.3d 981, 990 (E.D. Mo. 2021) ("The United States District Courts in Missouri have consistently held that Rule 9(b) applies to [Missouri Merchandising Practices Act] cases."); American Orthodontics Corp. v. Epicor Software Corp., 746 F.Supp.2d 996, 999 (E.D. Wis. 2010) (applying Rule 9(b) to Wisconsin's Deceptive Trade Practices Act); F.T.C. v. Lights of America, Inc., 760 F.Supp.2d

848, 852-853 (C.D. Ca. 2010) (holding that, as an issue of first impression, Rule 9(b) applies to FTC Act complaints). As Plaintiffs point out, this is not the type of private fraud action that is similar to those at issue in the cases applying state statutes.

Security Rare Coin & Bullion Corp. did not speak directly on the issue of whether Rule 9(b) governs FTC Act cases. However, as noted above, the 8th Circuit stated that such claims are not "private fraud actions" and that "proof of subjective reliance" is not required in order for the Court to grant relief. Id. 931 F.2d at 1316. The court also stated, in dicta, that:

> Security Coin points out that the FTC did not allege that Security Coin's buy-back policy was an unfair or deceptive trade practice in violation of section 5(a) of the Act. Security Coin argues that because the FTC failed to state with particularity a circumstance constituting fraud as required by Federal Rule of Civil Procedure 9(b), Security Coin was prejudiced by lack of notice of the fraud claim and the consequent lack of opportunity to offer an adequate defense. We conclude that Security Coin's arguments are without merit.

Id. at 1315. In so holding, the Court did not analyze whether Rule 9(b) applied but rather found that "the issue was well within the ambit of the FTC's pleadings, and that in any event was tried by consent of the parties." Id. Thus, the defendant in that case had adequate notice of the claim and the opportunity to defend against it.

In any event, all parties agree that claims that are "grounded in fraud" regardless of the use of the term, must be pled with particularity. Streambend Properties II, LLC, 781 F.3d at 1013 (finding that when a statute does not provide guidance, the court must engage in a "pleading-specific inquiry" to determine if Rule 9(b) applies). To the extent that Plaintiffs' claims allege elements of fraud, inasmuch as they claim that Defendants made material misrepresentations to induce action to the detriment of consumers and for their benefit, the Complaint satisfies Rule 9.[2] Plaintiffs have sufficiently alleged the "who, what, when, where,

---

[2] Plaintiffs have not argued mere negligence on Defendants' part, which would squarely fall out of the purview of Rule 9. Streambend Properties II, LLC, 781 F.3d at 1013 (holding that "if there are no specific averments of fraud,

and how" of Defendants' alleged misconduct thus permitting them to "respond specifically and quickly to the potentially damaging allegations." United States ex rel. Costner v. United States, 317 F.3d 883, 888 (8th Cir. 2003).

Plaintiffs allege that Defendants, acting in concert, induced consumers to purchase time share exit services through deceptive means, from 2018 to the present, throughout the United States, in person and through the mail.[3] While these allegations are not overly detailed in some respects (Plaintiffs do not quote exactly what was said to consumers at the in person meetings), they are sufficient under Rules 8 and 9. Plaintiffs lay out the relationship between each of the Defendants and how they acted in concert; they lay out in detail what Defendants did (either directly or based on the directions of other Defendants), namely use deceptive means (false associations/scare tactics) to extract (exorbitant) fees with no corresponding follow through on promises (regarding cancellation of timeshares) and with insufficient information on cancellation rights; they state that this scheme began in 2018 to the present; they allege that the scheme was perpetrated through the mail and in person at hotels and restaurants through individual Defendants or by employees at their direction; and they allege that false statements of associations, intimidating tactics, and empty promises were used to induce payment. As such, the Complaint sufficiently alleges enough to permit Defendants to specifically and quickly respond.

---

only allegations of innocent or negligent misrepresentations and omissions, then the sufficiency of this claim is governed by the notice pleading standards of Rule 8(a)").

[3] In Streambend Properties, the Eighth Circuit disapproved of complaints that "attributed fraudulent representations and conduct to multiple defendants generally, in a group pleading fashion" and found that they are inconsistent with Rule 9(b). Id. 781 F.3d at 1013; but see, Moore v. Kayport Package Express, 885 F.2d 531, 540 (9th Cir.1989) (holding that a complaint need only include the roles of individual defendants in corporate fraud cases where possible, because such situations make it difficult to attribute particular conduct to each defendant). In this case, Plaintiffs do not group defendants in a manner that would offend Rule 9(b). Instead, they identify the relationships between each Defendant, the legal theory on which each is accountable for the actions of others, which Defendant controls and directs and actions of others, and how they are interrelated.

Defendants further argue that the Complaint only makes "conclusory" or non-specific allegations against each of the individual Defendants -- that the Complaint constitutes an impermissible "shotgun" pleading.  A shotgun pleading can refer to a variety of complaints but generally describes those pleadings that are so general that they fail to place Defendants on notice of the claims against them.  See Fidelity National Title Ins. Co. v. APM Mgmt. Services LLC, 2023 WL 5021804 (E.D. Mo 2023).  The Complaint states that each of the corporate Defendants (which includes the trusts) engaged in a common enterprise to defraud consumers (Doc. 1 ¶ 30).  See P.F. Collier & Son Corp. v. F.T.C., 427 F.2d 261, 267-268 (6th Cir. 1970) (permitting a common enterprise theory of liability in FTC Act cases); New Mexico ex rel. Balderas v. Real Estate Law Center, P.C., 430 F.Supp.3d 761, 865 (D. New Mexico 2019) (collecting cases).  The Complaint further alleges that each of the individual Defendants are owners, officers, or directors of the corporate Defendants with the power to control, direct, and participate in the acts of the corporate Defendants (Doc. 1, ¶¶ 25-29).  Finally, the Complaint groups all Defendants in making specific allegations of the scheme that they engaged in to sell timeshare exit services.  Defendants are correct in noting that Plaintiffs will need to prove the individual participation or culpability of each of the named Defendants through either direct or circumstantial evidence; at this stage of the proceedings, however, Plaintiffs need only allege such participation, which they have done.  Plaintiffs are not required to assert a multitude of facts that would establish liability or provide (at this juncture) a detailed recitation of each individual Defendants participation in the allegedly unlawfully practices.

As to the alter ego theories,[4] the Complaint alleges that Defendants Farmington Allegiance, LLC and Mainline Partners, LLC are alter egos of the other named corporations and

---

[4] Defendants briefly argue that they cannot be held vicariously liable for the actions of other Defendants.  The Complaint does not allege vicarious liability.

that Mainline also is the alter ego of Farmington (Doc. 1, ¶¶ 17-19).  In addition, the Complaint alleges that Christopher Carroll and George Reed, individual Defendants, are managers of Farmington (Doc. 1 ¶¶ 17, 19).  Moreover, the Complaint alleges that each of the trusts are alter egos of associated individual Defendants (Carroll, George Reed, and LouAnn Reed), Mainline, and Farmington (and their subsidiaries) (Doc. 1, ¶¶ 21, 23).  Defendants argue that, pursuant to Missouri law, the claims must fail because they contain only conclusory allegations that lack specificity.  As Plaintiffs point out, it is unclear why Missouri law would apply to either the federal claims or Wisconsin state law claims – Defendants make no argument in their initial briefs and do not clarify in their replies.  See, e.g., Greater Kansas City Laborers Pension Fund v. Superior General Contractors, Inc., 104 F.3d 1050, (8th Cir. 1997) (noting that labor law and "corporate law" set forth different alter ego standards).  The Court may reevaluate these claims at a later stage of the proceedings if appropriately raised by the parties.

In sum, the allegations in the Complaint are sufficient to place Defendants on notice of the federal claims against them.  The Complaint satisfies federal pleading requirements.

**B.  State Law Claims**

    1. Sufficiency

As with the FTC Act claims, Defendants also argue that Plaintiffs' state law claims must be pled with particularity as required by Rule 9(b).  For the reasons set forth above, this argument is unavailing.  All parties agree that "whether a state-law claim sounds in fraud, and so triggers Rule 9(b)'s heightened standard, is a matter of substantive state law." Olin v. Dakota Access, LLC, 910 F.3d 1072, 1075 (8th Cir. 2018) (citation, quotation marks, and editing marks omitted).  The Wisconsin Supreme Court has found that the state equivalent to Rule 9(b) does not apply to § 100.18 claims.  Hinrichs v. DOW Chemical Company, 937 N.W.2d 37, 43 (Wis.

2020); See also State v. Excel Management Services, Inc., 331 N.W.2d 312, 489-490 (Wis. 1983). Accordingly, it is reasonable to find that Rule 9(b) does not apply to Plaintiffs' state law claims. To the extent that Plaintiffs must plead their deceptive practices claims with particularity, they have done so, as set forth above.

2. Jurisdiction

As noted above, the Wisconsin ATCP may enforce this state statute "in any court having equity jurisdiction" and "may commence an action in circuit court." Wis. Stat. § 100.18(11)(a), 100.18(11)(d), and 100.20(6).[5] Statutes are interpreted to give full meaning and intent; words are given their ordinary and accepted meaning; and, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably to avoid absurd or unreasonable results."

---

[5] In full:

§100.18(11)(a): The department of agriculture, trade and consumer protection shall enforce this section. Actions to enjoin violation of this section or any regulations thereunder may be commenced and prosecuted by the department in the name of the state in any court having equity jurisdiction. This remedy is not exclusive.

§100.18(11)(d): The department or the department of justice, after consulting with the department, or any district attorney, upon informing the department, may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction any violation of this section. The court may in its discretion, prior to entry of final judgment, make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department and the department of justice may subpoena persons and require the production of books and other documents, and the department of justice may request the department to exercise its authority under par. (c) to aid in the investigation of alleged violations of this section.

§100.20(6): The department may commence an action in circuit court in the name of the state to restrain by temporary or permanent injunction the violation of s. 100.70 or any order issued under this section. The court may in its discretion, prior to entry of final judgment make such orders or judgments as may be necessary to restore to any person any pecuniary loss suffered because of the acts or practices involved in the action, provided proof thereof is submitted to the satisfaction of the court. The department may use its authority in ss. 93.14 and 93.15 to investigate violations of s. 100.70 or any order issued under this section.

State v. MacArthur, 750 N.W.2d 910 (Wis. 2008); Accord State, Missouri Dep. Of Social Services, Div. of Aging v. Brookside Nursing Center, Inc., 50 S.W.3d 273, 276 (Mo. 2001), and Dolan v. United States Postal Service, 546 U.S. 481, 487 (2006).  Based on this language, and in the context of venue, Defendants argue that Plaintiffs' state law claims <u>must</u> be brought in state circuit court and not this court; essentially, "may means must."[6]  The Court is not convinced by Defendants' limited argument.  Defendants have cited to no relevant case authority that limits the State of Wisconsin to filing deceptive practices claims only in state circuit court.[7]  And, the word may is permissive, not exclusive; there is no limiter like the word only (as in, the state may only file suit in circuit court or the state may file suit only in circuit court).  Dawson v. Town of Jackson, 801 N.W.2d 316, 335 (Wis. 2011) ("We decline to read into the statute words the legislature did not see fit to write.").[8]

This Court must exercise supplemental jurisdiction over claims related to those over which it has original jurisdiction:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C.  § 1367.  Related claims are those that "derive from a common nucleus of operative fact . . . such that a plaintiff would ordinarily be expected to try them all in one judicial

---

[6] Presumably Defendants mean to argue that "may" refers to Wisconsin's discretion to enforce or not enforce its statute only; but if it chooses to enforce it through a lawsuit, it must be filed in circuit court.

[7] Defendants' example, State v. Balistreri, 274 N.W.2d 269, 270-271 (Wis. Ct. App. 1978), did not comment upon whether a claim for injunctive relief under §100.18 must be filed in circuit court.

[8] In Excel Mgmt. Ser., Inc., 331 N.W.2d 312, the Wisconsin Supreme Court did not directly address whether such claims must be exclusively brought in state circuit court.  However, the opinion interestingly interposes "trial court" and "court of equity" for "circuit court" throughout the opinion; suggesting, perhaps, that the statute would be interpreted by that Court as allowing such lawsuits to be filed in any trial court of general jurisdiction, even this one.

proceeding." Benchmark Insurance Company v. SUNZ Insurance Company, 36 F.4th 766, 771 (8th Cir. 2022) (quotation marks, editing marks, and citations omitted).  Once original jurisdiction is established, supplemental jurisdiction over related claims is "mandatory." Id. Supplemental jurisdiction may only be declined in limited circumstances:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. § 1367(c).  Defendants briefly argue that the State of Wisconsin's claims raise novel and/or complex issues of state law that will predominate the federal claims.  The state law claims are neither novel, there being decades of case authority, nor complex and do not predominate the federal claims, which are substantial in this case.  See, e.g., Milford v. Roehl Transport, Inc., 2023 WL 2503495 (E.D. Wis. 2023) (analyzing similar state law claims); Bakery Bling v. Matrix Packaging Machinery, LLC, ___ F.Supp. ___, 2023 WL 4933913(E.D. Wis. 2023) (same).

Defendants' remaining arguments, including their mention of statute of limitations, are either undeveloped or lacking in merit.

## IV.    Conclusion

For the foregoing reasons, the Reed Defendants' Motion to Dismiss (Doc. 50) is **DENIED**; the Carroll Defendants' Motion to Dismiss (Doc. 54) is **DENIED**; and Defendant Jackson's Motion to Dismiss (Doc. 56) is **DENIED**.

Once Defendants have filed their answers, a Rule 16 Scheduling Conference will be set.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 22th day of September, 2023